CV-S-02-1683-LDG-LRL

1

2   Alexander Loglia
    2232 S. Nellis Blvd., #182
3   Las Vegas, Nevada 89104
    (702) 579-8825
4

5            **DISTRICT COURT OF THE UNITED STATES**

6   _____

7   ALEXANDER LOGLIA                          )
                                              )
8              Plaintiff,                     )
                                              )
9          v.                                 )
                                              )
10  UNITED STATES OF AMERICA,                 )
11  as corporator and alter ego of the International  )   **VERIFIED COMPLAINT FOR**
    Monetary Fund and the International Bank for      )   **DAMAGES UNDER 26 USC §§**
12  Reconstruction and Development; INTERNAL          )   **7214(a), 7431, 7432, 7433, 28 USC**
13  REVENUE SERVICE; an entity of unknown origin )       **§ 1346, FOR JUDICIAL REVIEW**
    MICHAEL L. FREITAG; DONNA FISHER;         )   **UNDER 26 USC § 6330(d)(1); FOR**
14  DEBRA M. BRUSH; FRANCINE SANDS; JAN       )   **DECLARATORY RELIEF; AND**
    SINCLAIR; WILMA S. HIGLEY; ROCHELLE       )
15  GOLDENBERG; JOHN DOE Individuals 1-50;    )   **CONSTITUTIONAL**
    RICHARD ROE Business or Government entities )  **VIOLATIONS**
16  51-100,                                   )
17                                            )
               Defendants.                    )   **TRIAL BY JURY DEMANDED**
18  _____          )

19

20

21          COMES NOW, the Plaintiff, Alexander Loglia (hereinafter "Loglia"), who complains of the

22  acts, omissions and pattern of conduct of the United States of America as corporator and alter ego

23  of the International Monetary Fund and the International Bank for Reconstruction and

24  Development, and in other capacity(s) unknown at this time, the Internal Revenue Service,

25

*1*

Michael A. Freitag, Donna Fisher, Debra M. Brush, Francine Sands, Jan Sinclair, Wilma S. Higley, Rochelle Goldenberg, John Does 1-50, and Richard Roes 51-100.  As cause of this Complaint, Plaintiff states as follows:

## JURISDICTION

**1.**     The district court of the United States has jurisdiction of this case pursuant to 28 USC § 1331 and 26 USC § 6330(d)(1)(B), for judicial review of the determination issued November 19, 2002 by the Internal Revenue Service, for type of taxes not identified or otherwise not reviewable by the Tax Court.

**2.**     Loglia hereby invokes the remedies afforded by *Bivens v. Six Unknown Named Narcotics Agents*, 403 U.S. 388 (1971), to bring this action against the defendants herein, if discovery determines that any of said defendants were officers or employees of the United States, contrary to the evidence presented herein.

**3.**     The district court of the United States has jurisdiction of this case under 26 USC § 7432 for failure to release a lien, and under 26 USC § 7433 for reckless, intentional, and/or negligent disregard of statutes and regulations under Title 26 USC in connection with the collection of alleged Federal tax.

**4.**     The district court has jurisdiction of the this case under 28 USC § 2201, to declare the rights and relations of Loglia and other interested parties in this matter.

**5.**     The district court of the United States has jurisdiction of this case under 28 USC § 1346 for the recovery of illegally assessed alleged taxes and penalties.

**6.**     The district court of the United States has jurisdiction of this case under 26 USC § 7431 for unauthorized disclosure of returns and return information.

7.      This case challenges the constitutionality of the *Gold Reserve Act of 1934*, as amended, the *Special Drawing Rights Act*, as amended, the *Articles Of Agreement of the International Monetary Fund*, as amended, and the *Multilateral Economic Assistance Act of 1995*, as amended, as is further described below.   Therefore, this action is one for which a three-judge court is required to be convened as provided in the United States Code, Title 28, Section 2284.

## NOTICE OF FOREIGN LAW

8.      The parties to this action are hereby given notice that Plaintiff may plead foreign law during the course and proceedings in this case.  See FRCP Rule 44.1.

## NOTICE UNDER CLASSIFIED INFORMATION PROCEDURES ACT

9.      The parties to this action are hereby given notice that Plaintiff may seek discovery, obtain copies of, and question witnesses about, classified information pursuant to the *Classified Information Procedures Act*.  See 18 USC, Appendix 2.

## PARTIES

10.     Plaintiff, Alexander Loglia (hereinafter "Loglia"), is a citizen of the State of Nevada, resides in the County of Clark, State of Nevada, and has been adversely affected by the acts and omissions of the Defendants and each of them.

11.     Defendant, Internal Revenue Service (hereinafter "IRS," and/or  the "Service"), is an entity of unknown origin, and not an agency of the United States.  See United State's Answer and Claim, *Diversified Metal Products, Inc., v. T-Bow Company Trust*, et al, Case No. 93-405-E-EJL, U.S. District Court for the District of Idaho, **Ex. 80-1**.

*3*

**12.**     The ultimate repository of authority over the Internal Revenue Service is vested in the position of United States Secretary of Treasury (hereinafter "Secretary"), one of the corporate Governors of the International Monetary Fund (hereinafter "IMF"), the International Bank For Reconstruction And Development (hereinafter "IBRD"), The Inter-American Development Bank, the Asian Development Bank, the African Development Bank, the African Development Fund, and the East European Development Bank, and said position is currently held by one Paul H. O'Neill, and will soon be taken over by John Snow.

**13.**     Defendant, de facto United States, was at all time relevant herein, a voting share stockholder in the IMF, the IBRD, The Inter-American Development Bank, the Asian Development Bank, the African Development Bank, the African Development Fund, and the East European Development Bank. The United States is operating under and according to the corporate Charter of said international organizations and not in its sovereign character and capacity and is sued in its said diminished and corporate capacity. See Dunhill of London v Cuba, 425 U.S. 652; *The Bank of the U.S. vs. Planters Bank of Georgia*, 6 L.E. 244; Public Law 94–564, 90 Stat. 2660, Senate Report 94–1148, pgs. 5947, 5957. See also **Ex. AR 80**.

**14.**     The corporate Governors of the above named international organizations are aliens or denizens and are not citizens of the United States of America or the Several States of the Union.

**15.**     Defendant, Michael A. Freitag (hereinafter "Freitag"), at all times herein complained of, was acting as a privately contracted agent of the IRS, under the direction and control of the Secretary. As Loglia as yet has no evidence that Freitag is an officer or employee of the United States, Freitag is being sued in both his individual and official capacity, if any, and any references to him shall refer to both capacities. Freitag, at all times relevant herein, has had access to the records and documents produced and possessed by the IRS, and further, has access to legal

information and materials and legal counsel.

**16.** Defendant, Donna Fisher (hereinafter "Fisher"), at all times herein complained of, was acting as a privately contracted agent of the IRS, under the direction and control of the Secretary. As Loglia as yet has no evidence that Fisher is an officer or employee of the United States, Fisher is being sued in both her individual and official capacity, if any, and any references to her shall refer to both capacities. Fisher, at all times relevant herein, has had access to the records and documents produced and possessed by the IRS, and further, has access to legal information and materials and legal counsel.

**17.** Defendant, Francine Sands, (hereinafter "Sands"), at all times herein complained of, was acting as a privately contracted agent of the IRS, under the direction and control of the Secretary. As Loglia as yet has no evidence that Sands is an officer or employee of the United States, Sands is being sued in both her individual and official capacity, if any, and any references to her shall refer to both capacities. Sands, at all times relevant herein, has had access to the records and documents produced and possessed by the IRS, and further, has access to legal information and materials and legal counsel.

**18.** Defendant, Jan Sinclair (hereinafter "Sinclair"), at all times herein complained of, was acting as a privately contracted agent of the IRS, under the direction and control of the Secretary. As Loglia as yet has no evidence that Sinclair is an officer or employee of the United States, Sinclair is being sued in both her individual and official capacity, if any, and any references to her shall refer to both capacities. Sinclair, at all times relevant herein, has had access to the records and documents produced and possessed by the IRS, and further, has access to legal information and materials and legal counsel.

**19.** Defendant, Debra M. Brush (hereinafter "Brush") at all times relevant herein, was acting as

a privately contracted agent of the IRS, under the direction and control of the Secretary.  As Loglia as yet has no evidence that Brush is an officer or employee of the United States, Brush is being sued in both her individual and official capacity, if any, and any references to her shall refer to both capacities.  Brush, at all times relevant herein, has had access to the records and documents produced and possessed by the IRS, and further, has access to legal information and materials and legal counsel.  At all times relevant herein, Brush was acting as a supervisor of Freitag and Fisher, and had full knowledge of Freitag's activities and the documents and records he possessed and reviewed pertaining to Loglia.

20.     Defendant, Wilma S. Higley (hereinafter "Higley"), at all times herein complained of, was acting as a privately contracted agent of the IRS, under the direction and control of the Secretary. As Loglia as yet has no evidence that Higley is an officer or employee of the United States, Higley is being sued in both her individual and official capacity, if any, and any references to her shall refer to both capacities.  Higley, at all times relevant herein, has had access to the records and documents produced and possessed by the IRS, and further, has access to legal information and materials and legal counsel.

21.     Defendant, Rochelle Goldenberg (hereinafter "Goldenberg"), at all times herein complained of, was acting as a privately contracted agent of the IRS, under the direction and control of the Secretary.  As Loglia as yet has no evidence that Goldenberg is an officer or employee of the United States, Goldenberg is being sued in both her individual and official capacity, if any, and any references to her shall refer to both capacities.  Goldenberg, at all times relevant herein, has had access to the records and documents produced and possessed by the IRS, and further, has access to legal information and materials and legal counsel.

22.     Pursuant to 26 CFR § 601.106(f), Freitag, Fisher, Brush, and any other IRS agents making

determinations in any "appeals" proceeding are required to "hew to the law," and have a duty "to determine the correct amount of tax, with strict impartiality . . . ." See 26 USC § 7214.

23.     Plaintiff will pray leave of Court to amend this Complaint to include the actual names of Defendants, whether individuals, corporations, governmental, non-governmental, or other artificial entities whose names become known during the course of this litigation.  The true names and capacities of the individual Defendants named herein as JOHN DOES 1 through 50 (hereinafter "Does 1-50"), inclusive, are currently unknown to Plaintiff.  The corporations, governmental entities, and otherwise artificial entities, whether foreign or domestic, referred to herein as RICHARD ROE BUSINESS OR GOVERNMENTAL ENTITIES 51 through 100 (hereinafter "Roes 51-100"), inclusive, are corporations/artificial entities/governmental/non-governmental entities owned, operated, directed by, and/or associated with the above-named Defendants or such other entities or individuals, the names of which are currently unknown to Plaintiff, and which aided, abetted, counseled, commanded, or procured the commission or furtherance of the acts and omissions complained of.  Therefore, Plaintiff sues said unknown Defendants, whether individuals, corporations, governmental entities, non-governmental entities, and/or other artificial entities, by fictitious name.  Plaintiff prays leave of Court to amend this Complaint to include the actual names of said Defendants, whether individuals, corporations, governmental entities, non-governmental entities, or other artificial entities, either foreign or domestic, whose names become known during the course of this litigation.

24.     All references herein to Defendants, unless otherwise specified, refers to the Defendants, their principals, and each of them, jointly and severally, known or unknown, whether acting individually or in any combination.

## BACKGROUND OF PROCEEDINGS PERTAINING TO
## COLLECTION DUE PROCESS HEARING

**25.** As part of this matter pertains to a collection due process hearing (hereinafter "CDPH") held with the IRS, and the Exhibits relevant hereto were presented at said hearing or part of the record of its proceedings, the entire Administrative Record of that hearing process, including the transcript of the proceedings, is submitted herewith and incorporated herein by reference as as if fully reproduced herein, and includes Exhibits 1-94 submitted herewith, as well as Ex. 95, which is the IRS's response to Loglia's February 6, 2002 FOIA request. Due to the voluminous nature of the Administrative Record, the fact that it contains returns, return information, and taxpayer return information pertaining to Loglia protected under 26 USC § 6103, the fact that Loglia does not want said confidential and secret information disseminated to the public in any manner, and the fact that it is already in possession of the IRS, it will not be served on individual defendants but will remain in the court records and be available for in camera inspection there by duly authorized and directly interested parties  upon determination of a motion to seal to be filed shortly.  The Administrative Record is divided into three volumes; the first volume consisting of Loglia's Updated request for a collection due process hearing with the IRS dated July 1, 2002, a brief and **Ex. 1-50**; the second volume consisting of **Ex. 51-80**; and the third volume consisting of **Ex. 81-94**, which includes correspondence with the IRS pertaining to the CDP hearing process (**Ex. 88-93**.

**26.** On or about May 12, 1997, the IRS purportedly executed assessments against Loglia pertaining to the 1995 tax year, being in the amount of "0.00" units of an unspecified currency valued in IMF's Special Drawing Rights, as reflected in Loglia's Individual Master File, **Ex. 8**, page 1.

**27.** On or about March 2, 1998, the IRS purportedly executed three assessments against Loglia

pertaining to the 1995 tax year, being in the amounts of "2160.00," "19,409.00," and "1,9671.41" units of an unspecified currency valued in IMF's Special Drawing Rights, as reflected in Loglia's Individual Master File, **Ex. 8**, page 2. A copy of the Summary Record of Assessment dated March 2, 1998, allegedly reflecting the purported assessment, bearing certificate number 13319980302005, and signed by Sinclair, is found under **Ex. 4**, under Exhibit 3.

28.    On or about March 30, 1998, the IRS purportedly executed assessments against Loglia pertaining to the 1996 tax year, being in the amount of "0.00" units of an unspecified currency valued in IMF's Special Drawing Rights, as reflected in Loglia's Individual Master File, **Ex. 8**, page 4.

29.    On or about May 12, 1997, May 5, 1997 and September 8, 1997, the IRS purportedly executed assessments against Loglia pertaining to the 1995 and/or the 1996 tax years.    Copies of the Summary Records of Assessment dated May 5, 1997 and September 8, 1997, allegedly reflecting the purported assessments, bearing certificate numbers 13319970512001, 13319970505006 and 13319970908002, and signed by Goldenberg, are found under **Ex. 3, 95** under Exhibit 2 and 3, respectively.

30.    On or about February 8, 1999, the IRS purportedly executed assessments against Loglia pertaining to the 1996 tax year, being in the amounts of "434.00," "2,175.00," "14,115.00," and "1,810.89" units of an unspecified currency valued in IMF's Special Drawing Rights, as reflected in Loglia's Individual Master File, **Ex. 8**, page 5. A copy of the Summary Record of Assessment dated February 8, 1999, allegedly reflecting the purported assessment, bearing certificate number 13319990208008, and signed by Sands, is found under **Ex. 4**, under Exhibit 4.

31.    At the time she signed the Summary Records of Asseessment as relevant herein, Sands was not an officer of the United States, was not an assessment officer, and there, was no authority

delegated to her or her position authorizing her to act as an assessment officer, to inspect confidential return information or taxpayer information, or sign summary records of assessment.

32.     At the time she signed the Summary Records of Asseessment as relevant herein, Sinclair was not an officer of the United States, was not an assessment officer, and there was no authority delegated to her or her position authorizing her to act as an assessment officer, to inspect confidential return information or taxpayer information, or sign summary records of assessment.

33.     At the time she signed the Summary Records of Asseessment as relevant herein, Goldenberg was not an officer of the United States, was not an assessment officer, and there was no authority delegated to her or her position authorizing her to act as an assessment officer, to inspect confidential return information or taxpayer information, or sign summary records of assessment. See **Ex. 95**.

34.     On or about December 20, 2001, the IRS filed an uncertified Notice of Federal Tax Lien (hereinafter "NFTL") (**Ex. 1**) as against Loglia in the records of Office of the City Register, New York County, reflecting an amount due of 12,761.41 for 1995, and 13,118.89 for 1996, and said NFTL was in effect against Loglia and his property, and remains in the records of the Office of the City Register, New York County, State of New York.

35.     Defendants knew that the December 20, 2001 uncertified NFTL contained confidential return information and taxpayer return information pertaining to Loglia, and that they did publicly disclose said confidential information through filing with the Office of the City Register, New York County.

36.     The NFTL is uncertified, and bears a non-original stamped impression of a name of an unknown individual who signed the document, and below that signature are the words "for R M CONNOLLY".

**37.**    Defendants knew or were grossly negligent in not knowing that the that NFTL had clouded or otherwise encumbered property belonging to Loglia and that said NFTL had to be filed in accordance with the laws of the State of New York.

**38.**    The NFTL references a 1040 "Kind of tax," and indicates tax periods ending 12/31/1995 and 12/31/1996.   There is no "1040" "Kind of Tax" identified anywhere in Title 26 or the applicable regulations.

**39.**    The NFTL references assessment dates for the 1995 and 1996 tax periods of March 2, 1998, and February 8, 1999, respectively.

**40.**    Defendants knew or were grossly negligent in not knowing that Loglia never received any valid and lawful notice of any deficiency pertaining to the 1995 and 1996 liabilities that the Defendants allege he is or was liable for.

**41.**    Defendants knew or were grossly negligent in not knowing that Loglia never received any valid and lawful notice and demand for payment of any tax liabilities pertaining to the 1995 and 1996 liabilities that the Defendants allege he is or was liable for.

**42.**    Defendants knew or were grossly negligent in not knowing that Loglia never received any valid and lawful Form 17 pertaining to the 1995 and 1996 liabilities that the Defendants allege he is and was liable for.

**43.**    Loglia became aware of the NFTL on or about January 10, 2001.   It is unknown at this time whether the Secretary notified Loglia in writing of the filing and notice of the NFTL.

**44.**    Loglia requested a Collection Due Process Hearing ("CDPH") via his "REQUEST FOR A COLLECTION DUE PROCESS HEARING/COVER LETTER AND OVERVIEW OF REASONS" dated January 21, 2002, **Ex. 94**, with its exhibits excluded as they are redundant to a subsequent document, and in which Loglia presented some of  his evidence and arguments

regarding the inappropriate, unlawful, and oppressive collection activity used against him, and the fact that he had no tax liability for 1995 and 1996 to the United States of America, the IRS, or their principal(s).   The CPDH Request, included interrogatories and requests for production of document, as well as Loglia's statement that he would make audio and stenographic recordings of the hearing.

45.    On July 1, 2002, Loglia submitted his "UPDATED REQUEST FOR A COLLECTION DUE PROCESS HEARING/COVER LETTER AND OVERVIEW OF REASONS" (hereinafter "CDPH Brief") which included **Ex. 1-80**, and an updated comprehensive explanation of numerous procedural and due process violation pertaining to the 1995 and 1996 tax years. Since the exhibits annexed to the CDPH Request contained all Exhibits and arguments included in Loglia's January 21, 2002 request, plus additional exhibits and arguments, the January 21, 2002 CDPH request is not included in the records of this case.

46.    Freitag contacted Loglia via letter dated October 1, 2002, **Ex. 88**.  In that letter, Freitag proposed a hearing date of October 30, 2002.  Freitag did not provide any of the documents Loglia requested in his January 21, 2001 letter.  He did, however, state that:

> "no audio or stenographic recording are allowed on Appeals cases effective as of May 2, 2002, and forward.  Therefore, your request to tape record and / or bring a court reported to the Collection Due Process Hearing is denied."

Freitag also informed Loglia that he was going to obtain "certified transcripts showing the assessments" and supply Loglia with the same.

47.    Loglia replied to Freitag's October 1, 2002 letter via his letter dated October 16, 2002, which included additional Exhibits 81-83. See **Ex. 89**. In that letter, Loglia informed Freitag that the October 30, 2002 date was not convenient, and he proposed a November 12, 2002 date for the hearing. Loglia also informed Freitag that, in order to avoid any surprise, he wanted Freitag to

supply all documents upon which he was going to use in making his determination at least ten days prior to the hearing. Loglia also requested that Freitag be sure he obtain certified copies of Loglia's IMF transcripts, as well as any and all documents examined by any certifying officers who certified any alleged assessments against Loglia, or signed any Forms 4340 pertaining to him. The October 16, 2002 letter contained a total of 11 specific information and/or document requests. The October 16, 2002 letter included an attachment, **Ex. 82**, which was Loglia's February 7, 2002 FOIA request and the Service's response to same, which clearly showed that the individuals who signed the relevant Summary Records of Assessment lacked delegated authority, that the IRS never actually sent Loglia notices of deficiency or notices and demand for tax for the years in question, that Annette Brinkmeier and the other individuals who signed the past Forms 4340 included did not possess proper delegated authority to do so, and many other procedural and substantive violations. Loglia again demanded presentment of the evidence against him, time to make his defense against the evidence, his right to confront and cross-examine government witnesses on the record, his right to make contentions of factual nature and a legal defense, and a fair and meaningful hearing, and objected to Freitag's denial of his request for audio and stenographic recording. He also stated that he wanted to subpoena witnesses, and demanded to know what process he had to follow to do this. Loglia further informed Freitag that he was completely denied his Loglia's ability to subpoena or otherwise request and examine witnesses, since the Examination Division never provided him this opportunity. The October 16, 2002 letter contained the following eleven requests:

>    1.    Please confirm whether or not we can reschedule the date for the CDP hearing some time into the second week of November. I propose a date of November 12, 2002.

>    2.    Please provide copies of the "certified transcripts showing the assessments"

you mentioned in your letter, as well as any and all documents you intend to use in making your determination of my case, prior to our hearing.

3.      Please send me copies of any and all documents you intend to use in making your determination of my case, at least 10 days prior to our hearing.

4.      Please obtain certified copies of my IMF transcripts, as well as the documents actually examined by any "certifying officer" who certified any alleged assessments against me or signed any Forms 4340 for the years in issue, and forward them to me immediately.

5.      Provide responses to the interrogatories I included under Exhibit 3 of my Brief, and produce documents responsive to the request for production of documents I provided under Exhibit 4 of my Brief.

6.      Regarding collection alternatives, please provide copies of the appropriate forms you mentioned in your letter relating to payment plans and offers in compromise, properly identified and sent to me well in advance of our hearing date so that I can have an opportunity to prepare them, if applicable.

7.      Please indicate whether the documents you referenced in your letter pertaining to collection alternatives must be filed before the hearing, and where this requirement is found in the regulations, statutes, etc.

8.      Please indicate what effect my application for an installment agreement or an offer in compromise will have on the Collection Due Process hearing process.

9.      Please confirm that you have already received my 128 page "BRIEF IN SUPPORT OF COLLECTION DUE PROCESS HEARING FOR ALEXANDER LOGLIA" dated July 1, 2002, and supporting Exhibits 1-80.

10.     Please provide me with copies of the determination, regulation, statute, or other relevant documentation that clearly indicates that "no audio or stenographic recordings are allowed on Appeals cases effective May 2, 2002, and forward," as you stated in your letter, and indicate whether this change in rules refers to actual hearing dates, the dates actions began, etc.

11.     Please indicate what process I must follow to subpoena witnesses, since I was completely denied my ability to subpoena or otherwise request and examine witnesses. In the alternative, provide evidence that I was afforded this right by the

Examination Division.

**48.** Freitag replied to Loglia's October 16, 2002 letter via letter dated October 22, 2002. See Ex. 90. In that letter Freitag only confirmed the new hearing date of November 12, 2002, and provided copies of Forms 2866 and 4340 for 1995 and 1996. Freitag did not respond to any of Loglia's interrogatories or requests for production, and completely refused to respond to eight of the eleven information/document requests of Loglia's October 16, 2002 letter.

**49.** Loglia responded to Freitag's October 22, 2002 letter via his letter dated October 29, 2002. See Ex. 91. In that letter, Loglia reiterated his need for the the 8 unanswered document and information requests from his October 16, 2002 letter, and stated the following:

"You responded to Items 1 and 2. In reference to item 3, since you only provided me with the Forms 4340, I must assume that those Forms 4340 you provided are the sum total of the documents you intend to base your determination on, excluding those I provided. You appear, however, to have completely ignored Items 4-11. Please respond to items 4-11 immediately.

"In particular, I am interested in collection alternatives, but you have not provided the information or forms I requested in Items 6-9. Also, you have failed to provide any authority supporting your statement that "no audio or stenographic recordings are allowed on Appeals cases effective May 2, 2002, and forward," as I requested in Item 10. Absent any citation of authority, I must assume you statement was not based on any valid authority, and I will need to proceed with having a tape and stenographic recording made of my hearing. Please respond to Item 10 immediately so we can resolve this issue. If I do not hear from you by November 1, 2002, I will assume that your statement was in error, and will arrange to have and audio and stenographic recording of my hearing made. (emphasis added,)

"In reference to the Forms 4340 you sent, I need to point out that those Forms 4340 you provided, as well as the IMFs provide by the Service (*Brief*, Ex. 8) clearly evidence that the Service never sent me any valid and lawful notice of deficiency, notice and demand for tax, nor any Form 17 for 95 and 96. See *Brief*, pages 2, 55, 56-57, 58, 63-67. This is also evidenced by the copies of the responses to the FOIA requests that I sent you with my October 16, 2002 letter. See *Brief*, Exhibits

82, 83."

**50.**     Freitag did not communicate with Loglia in any manner after Freitag's October 22, 2002 letter prior to the November 12, 2002 CDP hearing, and did not respond at all to Loglia's October 29, 2002 letter.

**51.**     Freitag's refusal to respond to Loglia's October 16, 2002 and October 29, 2002 letter,  and his refusal to provide items 4-11 or Loglia's requests from Loglia's October 16, 2002 letter, was in bad faith and demonstrated his bias and prejudice against Loglia and his bias and prejudice towards the unlawful and oppressive acts of his fellow agents and his principal.

**52.**     As will be further shown herein, the Forms 4340 Freitag supplied (**Ex. 90**) did not support any of his conclusions, and completely supported Loglia's position that Loglia was not liable for any tax under 26 USC for 1995 and 1996, that the assessments made against Loglia were invalid and unlawful, that the collection procedures being used against Loglia were fraudulent, unlawful, and oppressive, and that procedures, law, and regulations were violated in reference to the assessment and collection activities against Loglia for 1995 and 1996.

**53.**     The actual CDP Hearing took place at 10:00 am on November 12, 2002, at the IRS offices at 4750 West Oakey Blvd., Las Vegas, Nevada, with Loglia, Freitag, and Fisher present.

**54.**     At Loglia's CDP hearing of November 12, 2002, Loglia presented his case and submitted additional evidence and argument regarding the arbitrary, capricious, and unlawful collection activity used against him by Defendants,  and the fact that he had no tax liability for 1995 and 1996.  That additional evidence took the form of four documents that were made part of the Administrative Record.  See **Ex. 84-87**.

**55.**     At Loglia's CDP hearing of November 12, 2002, Loglia informed Freitag and Fisher that he was never sent, and never received any valid notice of deficiency and/or notice and demand for tax,

*16*

and/or Form 17 pertaining to the 1995 and 1996 tax years.  See generally, "Transcript of November 12, 2002 Collection Due Process  Hearing of Alexander Loglia," annexed to Loglia's December 9, 2002 letter, **Ex. 93**, (hereinafter "Trans.")

**56.**     At Loglia's CDP hearing of November 12, 2002, Freitag asserted he had seen a notice of deficiency in Loglia's Exhibits, but was unable to produce or identify it in the Exhibits after searching for it throughout the entire hearing. See generally **Ex. 93**, Trans.

**57.**     At Loglia's CDP hearing of November 12, 2002, Fisher repeatedly asked Loglia whether he had received any "Form W-2," when Loglia had already included them in his Exhibits, evidencing the fact that Fisher and Freitag had not reviewed the evidence, as such Forms were found under **Ex. 5, 6**. See **Ex. 93**, Trans. 19:23-20:10.

**58.**     At Loglia's CDP hearing of November 12, 2002, Freitag and Fisher were asked to produce, and refused to produce, originals or copies of any certified mail receipt or certified return receipt indicating that any valid notice of deficiency was sent to or received by Loglia for the 95 and 96 tax years. See **Ex. 93**, Trans. 8:12-9:16; 18:18-19:10.

**59.**     At Loglia's CDP hearing of November 12, 2002, Freitag and Fisher were asked to produce, and refused to produce, original or copies of any certified mail receipt or certified return receipt indicating that any valid notice and demand for tax and/or Form 17 was sent to or received by Loglia for the 95 and 96 tax years. See **Ex. 93**, Trans. 10:11-12:24.

**60.**     At Loglia's CDP hearing of November 12, 2002, Freitag and Fisher were asked to explain, and refused to explain, why no transaction code 494 appeared on the Individual Master File the Service prepared pertaining to Loglia for 95 and 96, which would show that a notice of deficiency was actually sent to Loglia for 1995 and 1996. See **Ex. 93**, Trans. 3:11-13; 4:3-17; 4:23-5:2; 10:11-13; 15:11-24; 17:9-19:11.

**61.** At Loglia's CDP hearing of November 12, 2002, Freitag and Fisher were asked to explain, and refused to explain, why a filing condition code "E" appeared on the Individual Master File the Service prepared pertaining to him for 95 and 96. See **Ex. 93**, Trans. 16:10-11.

**62.** At Loglia's CDP hearing of November 12, 2002, Freitag and Fisher were asked to explain, and refused to explain, why Loglia was sent a Computer Paragraph letter 504 pertaining to him for 95 and 96, when such letters pertain exclusively to Business Master File and IRAF transactions, which do not pertain to Loglia. See **Ex. 93**, Trans. 11:11-13:6.

**63.** At Loglia's CDP hearing of November 12, 2002, Fisher asked Loglia to presume he was never sent any notice of deficiency and present his challenges to the underlying liability, but then terminated the hearing shortly thereafter without cause. See **Ex. 93**, Trans. 19:6-22:8.

**64.** At Loglia's CDP hearing of November 12, 2002, Fisher warned she would terminate the hearing if Loglia raised any "frivolous" arguments. Loglia, not wanting to terminate the hearing , asked Fisher to identify frivolous arguments so that Loglia could avoid then and not cause the hearing to be terminated. Fisher mentioned a "Form 17C," and then terminated the meeting once Mr. Freitag admitted that he could not locate the notice of deficiency he stated he saw in Loglia's exhibits, thereby not allowing Loglia to present any of his issue pertaining to the underlying liability or to the numerous procedural violations perpetrated against Loglia. See **Ex. 93**, Trans. 20:20-22:8.

**65.** On or about November 19, 2002, Freitag and the IRS issued their "NOTICE OF DETERMINATION CONCERNING COLLECTION ACTION(S) UNDER SECTION 6320 and/or 6330," **Ex. 92**, which identified Freitag as the person to contact, but which was signed by one Debra M. Brush, listing a title of "Appeals Team Manager," which concluded that:

"It is our determination that the Automated Collection System was correct when it

*18*

was determined that a Notice of Federal Tax Lien should be filed."

66.    Upon receipt of the Notice of Determination, Loglia sent Freitag and Fisher a letter dated December 9, 2002, outlining the numerous factual errors and misrepresentations that were contained in the Notice of Determination.  See **Ex. 93**.

67.    At no time was Loglia afforded a full, fair, and impartial hearing by Defendants.

**JUDICIAL REVIEW/DAMAGE CAUSE OF ACTION 1**
**IRS INDIVIDUAL MASTER FILES**
**SHOW LOGLIA HAS NO FILING REQUIREMENT FOR 1995 AND 1996**

68.    Loglia repeats and realleges the allegations of Paragraphs 1 through 67 of this Complaint as though fully set forth herein.

69.    The allegations in this cause are referred to in the CDPH Brief, pgs. 25-27.

70.    All references to Individual Master File Transcripts (hereinafter "IMFT") herein will be to those prepared by unknown agents of the IRS and/or Defendants and pertaining to Loglia for 1995 and 1996, and as found under **Ex. 8**.

71.    All references to any "areas" on the IMFT's will be to the numbered identifiers found in the Handbook for Special Agents (11-6-92) pages 9781-240 - 240.10, Transcript Directory. See **Ex. 9**.

72.    With his request for a CDP hearing, Loglia submitted copies of the IMFT's pertaining to 1993, 1995 and 1996.  See **Ex. 8**.

73.    Regarding the IMFT, the IRS's own records (IRM MT 9781, at 334.112) indicate that:

> "The Individual Master File is designed to accumulate in each taxpayers account <u>all data pertaining to income taxes for which the taxpayer is liable</u>. . . . This returns filed include Income Tax forms 1040, 1040A, 1040 NR, 1040C, 1040SS, 1040PR, and Estimated Tax Returns 1040ES."

> "All tax data and related information pertaining to individual income taxpayers are posted to the Individual Master File so that the file reflects a continuously updated and current record of each taxpayer's account. . . . the data therein is used for accounting records, for issuance of refund checks, bill or notices, answering inquiries, classifying returns for audit, preparing reports and other matters concerned with the processing and enforcement activities of the Internal Revenue Service . . . The Individual Master File is designed to accumulate in each taxpayer's account all data pertaining to the income taxes for which the taxpayer is liable." See **Ex. 10**. (emphasis added).

74. Regarding the system of records known as the Business Master File (hereinafter "BMF"), the IRS's own records (IRM MT 9781, at 334.111) indicate that:

> "The Business Master File (BMF) maintained on magnetic tape is a tax record of business taxpayers required by law and regulations to have Employer Identification Numbers (EIN) as identifying account Numbers." **Ex. 10**.

75. Defendants knew or were grossly negligent in know knowing, that the BMF is limited to recording matters pertaining to employment, excise, and partnership tax returns, and refers to taxes related to IRS Forms 940, 720, CT-1, 942, 943, 1120S, 1041, 1065, 1120F, 1120M, 1120L, none of which apply to Loglia. See **Ex. 10**, section 334.111.

76. The 1995 and 1996 IMFs (**Ex. 8**) on Page 1, in area 68, "DLN of the document when it was filed," (**Ex. 9**), shows a Document Code of 10 and a Tax Class of 2. Pages 2-1 through 2-13 of the 6209 Manual, **Ex. 14**, shows that a Document Code 10 refers ONLY to a Form 1040A (See pg. 2-3), a Form 1120 U.S. Corporation Income Tax Return (See page 2-4), a Computation of Alternative Minimum Tax--Corporations and Fiduciaries (See page 2-8), or a Application for Determination upon Termination (Page 2-9). Being neither a corporation nor terminated, the only relevant Form according to the Services records is a 1040A. This is relevant because other sections of the 95 and 96 IMFs show that Loglia is not required to file or make a return, am not liable for

any tax, and doesn't owe any tax.

**77.**    The Document Locator Number (hereinafter "DLN"), is a controlled number assigned to every return or document input through the IRS's Automatic Data Processing system.

**78.**    The IMFT's show, and Defendants knew or were grossly negligent in not knowing, that Alexander Loglia is NOT required to file any 1040 Form or any return with the IRS. See 1995 IMFT, Page 2 (**Ex. 8**), transaction code of 595 posted 5/21/96. Page 8-27 of the 6209 Manual (**Ex. 18**) decodes TC 595, as meaning "Satisfying Transaction," and states:

> "Referred to Examination. Satisfies this module. Requires a two digit closing code for IDR input. Updates FR Code to zero. See Section 11 for appropriate closing codes." (emphasis added)

**79.**    Defendants knew or were grossly negligent in not knowing, that the "FR Code" refers to Filing Requirement Code. The TC 595 updates the FRC to zero. A "zero" FRC means a 1040 not required. Also see **Ex. 29**, (Ex. G-3) page 8-65, 6209 Manual, heading "Filing Requirement Codes (FR codes)," and subhead "FR IMF Form No.":

> "0      Not Required to File"

**80.**    Defendants knew or were grossly negligent in not knowing, that Loglia was not and is not required to file a return for 1995 and 1996. See **Ex. 8**, IRS's 1995 IMFTs showing an MF-STAT Code of 06, dated November 12, 1997. Page 8-42 of the 1994 6209 Manual, **Ex. 22**, shows that this MF-STAT Code of 06 means "Acceptable reason for non-filing of return."

**81.**    Defendants knew or were grossly negligent in not knowing, that the IMFT's clearly indicate Loglia is not required to file or make  Return of Form for 1995, and as Loglia's activity for 1995 is the same as that for 1996, Defendants knew and know that Loglia is not required to file or make any return with or to the IRS for 1995 and 1996.

**82.**    Defendants knew or were grossly negligent in not knowing, that absent a filing requirement,

pursuant to 26 USC § 6001, Loglia is not a "person required to file," and not a "person made liable for any tax," and therefore had no tax liability, and had no valid assessments against him for 1995 and 1996 according to the IRS's IMFT's.

**83.**    Defendants knew or were grossly negligent in not knowing, that the IMFTs for 1995 and 1996 show that Loglia was not and is not required to make or file a 1040 return for 1995 or 1996, thereby clearly showing that Loglia has no tax liability for 1995 and 1996, and that no valid assessments or lien existed pertaining to Loglia for 1995 and 1996.

**84.**    Defendants had in their possession legal material and manuals and had access to legal counsel, and knew or were grossly negligent in not knowing, that since Loglia is not and was not required to file a return according to the IMFT's, Loglia is not liable for any taxes that relate to such a filing requirement, and therefore the NFTL at issue in this matter which lists a tax liability for some 1040 "type of tax," is false, fraudulent, and oppressive.  The November 19, 2002 Notice of Determination should be reversed and should reflect that Loglia has no tax liability and no filing requirement for 1995 and 1996, and the NFTL should be released.

## JUDICIAL REVIEW/DAMAGE CAUSE OF ACTION 2
## IRS INDIVIDUAL MASTER FILES
## SHOWING LOGLIA HAS NO TAX LIABILITY FOR 95 AND 96

**85.**    Loglia repeats and realleges the allegations of Paragraphs 1 through 84 of this Complaint as though fully set forth herein.

**86.**    The allegations in this cause are referred to in the CDPH Brief, pgs. 25-27.

**87.**    Defendants knew or were grossly negligent in not knowing that the filing condition code on the 1995 and 1996 IMFTs (**Ex. 8**) is specified and designated as "E" for "Even," (meaning no tax due), showing that Loglia's filing requirement has been deleted.  Defendants had possession of and

access to **Ex. 9**, Handbook for Special Agents (11-6-92) pages 9781-240.8, where, under the heading Transcript Directory, item 32, is listed the definition of the filing condition code as follows:

"COND-R--Filing condition code      E--Even
                                                 B--Balance due
                                                 C--Credit elect
                                                   R--Refund"

showing that Loglia's account was and is even, and that there is no balance due. Also see Pages 3-8 through 3-9 of 6209 Manual, **Ex. 21**, section .05, "IMF Computer Condition Codes (also known as "Return Condition Codes")," listing the code "E" as:

"E      Delete Filing requirements for taxpayers who are not deceased." .

**88.**      The 1995 and 1996 IMFTs prepared by Defendants pertaining to Loglia (**Ex. 8**), show in Transcript Directory area 66 (**Ex. 9**), for "Transaction Amount-- Total Tax shown on the return," an amount of "0.00", a zero tax amount due shown on the returns prepared on May 12, 1997 and March 30, 1998, respectively.

**89.**      Area 91 on the 1995 and 1996 IMFTs is designated and described as "TOTAL INC TX--shows the total tax shown on tax return." **Ex. 9**. The entry in area 91 on the 95 and 96 IMFTs are zero (0.00).

**90.**      The IMFT's for 1995 and 1996 show and state that the return(s) filed by Defendants in reference to Loglia for 1995 and 1996 claim the sum of "0.00" as due and owing to Defendants.

**91.**      Defendants had in their possession legal material and manuals and had access to legal counsel, and knew or were grossly negligent in not knowing, that since Loglia is not and was not required to file a return according to the IMFT's, Loglia is not liable for any taxes that relate to such a filing requirement, and therefore the NFTL at issue in this matter which lists a tax liability

for Loglia for some 1040 "type of tax," is false, fraudulent, and oppressive. The November 19, 2002 Notice of Determination should be reversed and should reflect that Loglia has no tax liability and no filing requirement for 1995 and 1996, and the NFTL should be released.

### JUDICIAL REVIEW/DAMAGE CAUSE OF ACTION 3
### IRS INDIVIDUAL MASTER FILES
### SHOWING COMMINGLING OF BMF ACTIVITIES
### VIA IRS'S SUBSTITUTE FOR RETURN

**92.**     Loglia repeats and realleges the allegations of Paragraphs 1 through 91 of this Complaint as though fully set forth herein.

**93.**     The allegations in this cause are referred to in the CDPH Brief, pgs. 21-24.

**94.**     Both of the 1995 and 1996 IMFTs list transaction codes TC 150 dated May 12, 1997 and March 30, 1998, respectively, and associated document locator numbers of 19210-102-25069-7 and 19210-045-25560-8, respectively.

**95.**     Defendants knew or were grossly negligent in not knowing that these TC 150 listings refer exclusively to an "SFR" or "Substitute for Return" as shown under the IRS's 1994 6209 Manual at page 8-8, found under **Ex. 29** at G-2, indicating "return filed and tax liability assessed."

**96.**     Defendants knew or were grossly negligent in not knowing that the only authority for execution of the Substitute for Return is found under Title 26, Section 6020(b), and the implementing regulation is 27 CFR § 70.42, which pertains exclusively to Business Master File activity and excise taxable activities related to Title 27 USC.

**97.**     Defendants knew or were grossly negligent in not knowing, that in reference to the 1995 and 1996 liabilities they allege Loglia owes for 1995 and 1996, that none of those alleged liabilities pertain to any activity pertaining to excise taxable activities, or any matters relating to a BMF.

**98.**   IRS section 6020(b) is the statute under which the Secretary executes Substitute for Returns which are directly linked to the TC 150.

**99.**   Defendants knew or were grossly negligent in not knowing, that the TC 150/SFR listing pertains exclusively to employment, excise, and partnership tax returns, which absolutely do not apply to Alexander Loglia for 1995 and 1996.  See IR Manual MT 5200, section 5291 on page 5200-16, **Ex. 13**.

**100.**   Defendants knew or were grossly negligent in not knowing, that an SFR, and its posting, must first be established on a Non-Master File, or NMF.

**101.**   Defendants knew or were grossly negligent in not knowing, that when an SFR is established on an NMF, any procedures, activities, or entries can be fraudulently incorporated in the process, including those identified as "BMF only."

**102.**   Defendants knew or were grossly negligent in not knowing, that the 1040 Forms prepared in reference to Loglia as SFRs for 1995 and 1996, which are the source of the original assessments for 1995 and 1996 pertaining to Loglia and which are listed on the NFTL at issue in this case, were prepared under the authority of 26 USC § 6020(b), which ONLY applies to Title 27 ATF taxes and those listed on the IRS's Form 5546 as item 20, and it is under these fraudulent auspices that Notices of Deficiency are issued.  See IRS's Substitute for Return Handbook, MT 5480-4 (2-6-91) Chapter 100 at 120(2).

**103.**   **Ex. 15**, is a CP ("Computer Paragraph") 504 Notice sent to Loglia by the IRS for 1995 and 1996.  This Notice bears a three-digit "CP" number, which pertains EXCLUSIVELY to Business Master File (BMF) activity and Individual Retirement Account Files (IRAF), which in no way apply to Loglia, who is not and was not involved in any activity pertaining to BMF files, and never was involved in any transaction related to an individual retirement account:

"Computer generated notice and letters of inquiry are mailed to taxpayers in connection with tax returns for BMF, IMF, and IRAF. Computer paragraph (CP) numbers (3 digit number for BMF AND IRAF, 2 digit number for IMF) are located in the upper right corner of the notices and letters." **Ex. 16**, IRS's 6209 Manual page 9-1.

**104.**   The CP 504 letter sent Loglia by Defendants, **Ex. 15**, in furtherance of their continuous conspiratorial effort and scheme, evidences the fact that Business Master File activity has been fraudulently applied to Loglia in an attempt to unlawfully, fraudulently, and oppressively impose liability for taxes that Loglia is not liable for and/or which cannot lawfully be imposed against him and his property.

**105.**   Defendants had in their possession legal material and manuals and had access to legal counsel, and knew or were grossly negligent in not knowing, that Defendants were fraudulently applying Business Master File activity to Loglia in an attempt to unlawfully, fraudulently, and oppressively impose liability for taxes that Loglia is not liable for and/or which cannot lawfully be imposed against him and his property, and therefore the NFTL at issue in this matter is false, fraudulent, and oppressive.  The November 19, 2002 Notice of Determination should be reversed and should reflect that Loglia has no tax liability and no filing requirement for 1995 and 1996, and the NFTL should be released.

### JUDICIAL REVIEW/DAMAGE CAUSE OF ACTION 4
### IRS IMFT'S REFLECT FRAUDULENT W-4 PENALTY ASSESSMENTS
### AGAINST LOGLIA

**106.**   Loglia repeats and realleges the allegations of Paragraphs 1 through 105 of this Complaint as though fully set forth herein.

**107.**   The allegations in this cause are referred to in the CDPH Brief, pg. 32.

**108.**   Defendants knew or were grossly negligent in not knowing, that the DLNs on the 1995 and 1996 IMF pertaining to Loglia listed fraudulent W-4 penalty assessments relating to 26 USC § 6682 which have absolutely no relevance to Loglia or any activity pertaining to the 1995 and 1996 alleged tax liabilities.   No such penalty assessment applies to Loglia and is being fraudulently applied by Defendants to create and/or enlarge a false, fraudulent, and oppressive liability that does not exist.   See **Ex. 8** entries, page 2, 1995 and 1996 IMFTs with DLN containing document code 10, and blocking series between 000 and 299, indicating a civil W-4 Penalty assessment.   See **Ex. 34**, IRM MT 5400, page 5400-541 (3-7-89).

**109.**   Defendants had in their possession legal material and manuals and had access to legal counsel, and knew or were grossly negligent in not knowing, that Defendants were attributing fraudulent W-4 penalty assessments to Loglia to create and/or enlarge a false, fraudulent, and oppressive liability that does not exist, and therefore the NFTL at issue in this matter is false, fraudulent, and oppressive.   The November 19, 2002 Notice of Determination should be reversed and should reflect that Loglia has no tax liability and no filing requirement for 1995 and 1996, and the NFTL should be released.

**JUDICIAL REVIEW/DAMAGE CAUSE OF ACTION 5**
**IRS'S RECORDS REFLECT FRAUDULENT DESIGNATION OF TAXABLE ACTIVITY**
**PERTAINING TO LOGLIA**

**110.**   Loglia repeats and realleges the allegations of Paragraphs 1 through 109 of this Complaint as though fully set forth herein.

**111.**   The allegations in this cause are referred to in the CDPH Brief, pgs. 31-32.

**112.**   The 1993 AMDISAs/Forms 5546 Chargeouts (hereinafter "AMDISAs") pertaining to Loglia falsely and fraudulently lists an Activity Code of 530, and has been used on Loglia's

AMDISAs consistently since 1989. See **Ex. 30**.

**113.**    Defendants knew or were grossly negligent in not knowing, that the Activity code of 530 pertains to "F & S, Policies Issued by Foreign Insurers." See **Ex. 32**, 1991 6209 Manual at page 12-20 (in effect in 1993).

**114.**    Defendants knew or were grossly negligent in not knowing that Loglia is not now and never has been involved in the Policies Issued by Foreign Insurers in any manner.

**115.**    Defendants fraudulently asserted in their records that Loglia was involved in some excise taxable activity, which is strictly denied, in order to fabricate and/or falsify a liability where none exists.

**116.**    Defendants knew or were grossly negligent in not knowing, that *U.S. v. Buford*, 889 F.2d 1407, 1408, clearly demonstrates that the AMDISA is a summary of the IMF. See **Ex. 31**.

**117.**    The Cross-reference (XREF) on the 1993 AMDISAs (**Ex. 31**) list the DLN as 19277-129-200005, which appear nowhere on the 1993 IMF (**Ex. 8**), thereby proving that Defendants records are completely fabricated, false, and fraudulent. These DLNs should cross reference, but they do not.

**118.**    The DLNs on the AMDISA (**Ex. 30**) also list Blocking series codes (the 9th, 10th, and 11th digits of the Document Locator number) of 000 attributable to matters pertaining to BMF activity, and various excise activities, which absolutely does not apply to Loglia in any fashion. See **Ex. 26**, Item J-1, J-2, J-3.

**119.**    Loglia specifically directed the IRS to correct this fraud, but the IRS has refused. The IRS has never denied the fraud and misdesignation of excise taxable activity in reference to Loglia. See Privacy Act Amendment Request dated August 1, 1996, **Ex.33**.

**120.**    Defendants had in their possession legal material and manuals and had access to legal

counsel, and knew or were grossly negligent in not knowing, that Defendants fraudulently asserted in their records that Loglia was involved in some excise taxable activity, which is strictly denied, in order to fabricate a liability where none exists, and therefore the NFTL at issue in this matter is false, fraudulent, and oppressive. The November 19, 2002 Notice of Determination should be reversed and should reflect that Loglia has no tax liability and no filing requirement for 1995 and 1996, and the NFTL should be released.

## JUDICIAL REVIEW/DAMAGE CAUSE OF ACTION 6
## IRS INDIVIDUAL MASTER FILES
## SHOWING CONCEALMENT AND MISDESIGNATION OF
## TRUE TAX CLASS

**121.**    Loglia repeats and realleges the allegations of Paragraphs 1 through 120 of this Complaint as though fully set forth herein.

**122.**    The allegations in this cause are referred to in the CDPH Brief, pgs. 28-31.

**123.**    The tax classes of "2" listed throughout Loglia's 1995 and 1996 IMFT's were fraudulently listed as such, and were converted from their true tax class "6" designation, showing the Defendants' fraud and blatant commingling of tax classes "2" and "6," and intentional misdesignation of BMF taxable activity on the Individual Master File. See **Ex. 24**, "OFFICIAL INTERNAL REVENUE SERVICE NON-MASTER FILE TRANSCRIPT," tax class listed as "6" in the Document Locator Numbers, but with the "Type of tax" listed as 2, "income" tax; Also See IR Manual 38(43)4.3, **Ex. 26**, Item J-1, showing Tax class "6" applies to Non-Master File returns and documents.

**124.**    Defendants knew or were grossly negligent in not knowing, that the 1995 and 1996 IMFT's pertaining to Loglia fraudulently conceal the true tax class "6" and instead printed a tax

*29*

class 2, thereby concealing the fact that Defendants have designated the matters pertaining to Loglia as Non-taxable under the NMF system of records. See IRM at 38(43)4.3, **Ex. 26**, Item J-1 ¶ (6)(a)giving specific instructions to IRS employees to "Always use Tax Class 6. The first digit of the Blocking Series will identify the True Tax class." The Blocking series code is the 9th, 10th, and 11th digits of the Document Locator number.

**125.**    The DLN at the "lien" entry for the 1995 IMF of 19247-440-00145-8, and the "lien" entry for the 1996 IMF of 19247-407-20219-9, each having a third digit of 2 (tax class). This tax class 2 is non-taxable according to **Ex. 26**, Item J-3, when properly decoded under the proper NMF tax class of "6," and as fraudulently concealed by the Defendants in their 95 and 96 IMFTs.

**126.**    Defendants knew or were grossly negligent in not knowing that the so-called "taxes" referenced on the 1995 and 1996 IMFTs prepared pertaining to Loglia are limited and exclusive to the BMF, and were fraudulently entered and intentionally misdesignated via Non-Master File entries and transaction, which cannot and do not pertain to Loglia, his IMFTs, or any activity Loglia is involved in.

**127.**    By making fraudulent entries and intentionally misdesignating Loglia's activity as applying to BMF activity, Defendants devised and implemented a scheme to falsely and fraudulently make Loglia liable for a wide variety of excise and employment taxes which he is not liable for.

**128.**    The 1995 and 1996 IMFTs reflect a TC 150 on page 1, which is used equally to refer to a Business Master File. See IRM MT 5300-76, Section 5355.31, **Ex. 25**.

**129.**    The Blocking Series in the DLNs on the 1995 and 1996 IMFTs prepared by the IRS (200, 202, 250, 255, 600, 000, etc.), when properly decoded via their actual NMF origins, reflect false and fraudulent blocking series codes showing that the Defendants are holding Loglia liable for taxes that do not apply to him and which they know he is not liable for, including taxes pertaining to

EPMF/Excise-Protest Cases, EPMF, Withholding FICA, and Life/Mutual Insurance   See **Ex. 26**, Items J-1, J-2, J-3, O-2.

**130.**   Defendants knew or were grossly negligent in not knowing that Loglia has no liability pertaining to EPMF, PAC, or Life/Mutual Insurance.

**131.**   The blocking series of 200 on the IRS's 1995 and 1996 IMFT's, show that a "Non-taxable 1040" applies to Loglia and he therefore had and has no tax liability for 1995 and 1996.

**132.**   The Defendants' records evidence the fact that NMF transactions took place pertaining to the 1995 and 1996 IMFT's pertaining to Loglia, and that a BMF exists and/or its codes are being used to create a presumed liability for Loglia as a Withholding Agent and/or with BMF related tax liabilities.

**133.**   The IMFTs only contain "Social Security Numbers" for Individual Income Tax filers as posted under **Ex. 10** in the  Handbook for Special Agents, page 9781-51, Section 334.112, while the type tax Codes posted to the IMFTs are those limited to BMFs delineated in Section 334.111, and would require an Employer Identification Number, which do not apply to Loglia or his alleged liabilities for 95 and 96.

**134.**   The IRS also has no Form 2678 in reference to Loglia which they would require if Loglia were in fact a withholding agent, which he is not.  A description of Form 2678 is found under **Ex. 28**.

**135.**   Defendants had in their possession legal material and manuals and had access to legal counsel, and knew or were grossly negligent in not knowing, that Defendants were making fraudulent entries and intentionally misdesignating Loglia's activity as applying to BMF activity, to falsely and fraudulently make Loglia liable for a wide variety of excise and employment taxes which he is not liable for, as well as fraudulently make him liable as a Withholding Agent, which he

is not, and therefore the NFTL at issue in this matter is false, fraudulent, and oppressive. The November 19, 2002 Notice of Determination should be reversed and should reflect that Loglia has no tax liability and no filing requirement for 1995 and 1996, and the NFTL should be released.

## JUDICIAL REVIEW/DAMAGE CAUSE OF ACTION 7
## UNLAWFUL ASSESSMENT OF "ESTIMATED" TAXES

**136.** Loglia repeats and realleges the allegations of Paragraphs 1 through 135 of this Complaint as though fully set forth herein.

**137.** The allegations in this cause are referred to in the CDPH Brief, pgs. 22, 58.

**138.** The Forms 4340 provided by Freitag and Defendants with their October 22, 2002 letter at **Ex. 90** show an Estimated Tax Penalty of 434.00 for 1996.

**139.** Defendants knew or were grossly negligent in not knowing that neither the Secretary nor the IRS is authorized to "estimate" any amount of tax omitted to be paid on the basis of a return. See **Ex. 35**

**140.** Defendants knew or were grossly negligent in not knowing that 26 USC § 6201 does not authorize the Secretary or the IRS to estimate any amount of taxes which may have been omitted from a return.

**141.** Defendants knew or were grossly negligent in not knowing, that the Secretary is only authorized to estimate the amount of tax which has been omitted to be paid by stamp under 26 USC § 6201(a)(2)(A).

**142.** Defendants knew or were grossly negligent in not knowing, that Loglia is not liable for any taxes payable by stamp, and said "Estimated Tax Penalty" and associated charges as reflected on the IRS's Forms 4340 (**Ex. 90**) for 1996 and the NFTL at issue in this case are false, fraudulent, invalid, and without authority.

**143.**    The Service's 1996 IMF shows a TC 170 bearing a date of February 8, 1999, and an associated DLN of 19247-407-20219-9. The 1994 6209 Manual at page 8-9, **Ex. 23** and made part hereof, clearly states that the TC 170:

> "170    Debit            I/B        Estimated Tax Penalty
>
> Computer generated self assessment from TC 150 or  manually assessed.  ES penalty for failure to make adequate  ES payments.  Applicable to Form 990C, 1040, 1041, 990T, 990PF, and 1120, except on Adjustment or Revenue Receipt input."

**144.**    Loglia was never made liable for or required to pay any "estimated tax" by any section of the IRC.

**145.**    In addition, the "estimated tax penalty" allegedly assessed against Loglia for 1995 and 1996, apparently pertains to some failure to pay "estimated income tax" under 26 IRC § 6654, which Loglia is not liable for.

**146.**    There is no penalty provision for failure to pay ES tax, but instead there are only provisions that apply to additions to tax, and which according to 26 IRC § 6201(b) are not to be assessed.

**147.**    The TC 170 is applicable only to Forms and their related taxes, and as the Service's IMFs pertaining to Loglia for 95 and 96 show he is not required to file or make any return, these estimated tax penalties cannot and do no apply to Loglia for 95 and 96, and must be removed and expunged.

**148.**    Defendants were informed of and had knowledge of the information stated in paragraphs, 136 - 147, supra.

**149.**    Defendants, while knowing that Loglia had no tax liability or filing requirements for 1995 and 1996, while knowing that required "law" and "procedures" were not followed in the

assessment and collection of taxes pertaining to Loglia for 1995 and 1996, did, with intent to defraud, oppress, and harass and deceive Loglia, and in breach of their duties of office and/or employment, willfully and wantonly demand and attempt to obtain sums greater or other than those authorized by law, and did willfully and wantonly ignore the information presented to them as outlined in paragraphs 136-147, supra, and while knowing that "Estimated Tax Penalty" assessed against Loglia for 1995 and 1996 were false and fraudulent and assessed without lawful authority and in violation of 26 USC § 6201(a)(2)(A) did, in reckless, intentional, and/or negligent disregard of 26 USC § 6201(a)(2)(A) and other statutes and regulations, fail to release the NFTL at issue in this case, and did further issue the November 19, 2002 determination directing that the tax against Loglia was properly assessed and the IRS's collection actions were appropriate, and all to the damage and detriment of Loglia and in violation of law, including, but not limited to, 26 USC §§ 6330(c)(1), 6330(c)(3)(A), 7214, 7432, and 7433, and in an amount to be determined at trial.

150.    The November 19, 2002 Notice of Determination should be reversed and should reflect that Loglia has no tax liability, no filing requirement, and no valid assessments against him of Estimated Tax Penalty for 1996, and the NFTL should be released.

## JUDICIAL REVIEW/DAMAGE CAUSE OF ACTION 8
## FRAUDULENT FORMS 4340
## IRS'S FAILURE TO COMPLY WITH 26 USC § 6330(c)(1) and 6330(c)(3)(A)

151.    Loglia repeats and realleges the allegations of Paragraphs 1 through 150 of this Complaint as though fully set forth herein.

152.    The allegations in this cause are referred to in the CDPH Brief, pgs. 63-71.

153.    26 USC § 6330(c)(1) states:

"The appeals officer shall at the hearing obtain verification from the Secretary that

the requirements of any applicable law or administrative procedures have been met."

**154.** Defendants failed to obtain verification from the Secretary that the requirements of any applicable law or administrative procedures were met regarding the Collection Due Process hearing pertaining to Loglia.

**155.** The Forms 4340 provided by Freitag, and upon which the November 19, 2002 Notice of Determination is based, do not meet the requirement of § 6330(c)(1), and do not show that "the requirements of law or procedure have been met." See **Ex. 90**.

**156.** Neither the Forms 4340 under **Ex. 90**, nor the "Certificates of Official Record" annexed to them, constitute the "verification(s)" required under 26 USC § 6330 (c)(1). See **Ex. 42**. The Service's Forms 4340 contain a mere certifications, and do not meet the statutory requirements of 26 USC § 6330(c)(1).

**157.** The "certification" on the Form 4340 (**Ex. 36, 90**), it reads:

> "I certify that the foregoing transcript of the taxpayer named above in respect to the taxes specified is a true and complete transcript for the period stated, and all assessments, abatements, credits, refunds, and advance or unidentified payments, and the assessed balance relating thereto, as disclosed by the records of this office as of the date of this certification, are shown therein. I further certify that the other specified matters set forth in this transcript appear in the official records of the Internal Revenue Service."

**158.** The "certifying officer" who signed the most recent of these certifications is one "Wilma Higley," with her title listed as "Supervisory Investigative Analyst." The Service has provided no delegations of authority to the position held by Higley when she signed the certification, nor any and all official documents showing her official job title at the time she prepared and signed the Forms 4340. None of this information was provided by the Service, neither in relation to Higley, nor in relation to any of the other Forms 4340 ever prepared by the Service and provided to Loglia.

See **Ex. 90**.

**159.**   In *United States v. Pavenick* 197 F.Supp. 257 (D.N.J. 1961), the Court stated:

> "Therefore, upon proof of demand, the Government lien arises at the time of assessment by the collector. However, the evidence presently before me does not suffice to establish the Government's asserted lien because proof of its demand for payment of the amounts assessed has not been furnished. The mailing of form 17, Statement of Taxes Due (First Notice and Demand) referred to in the affidavit of Vincent P. McGinley, Acting Chief Accounts —— Maintenance Section, Supervisor of Account Card Unit in the Office of the Neward District Director of Internal Revenue, is therein stated to be disclosed by the records of his office; but neither those records nor copies thereof, as provided by 28 USC 1733, have been presented to me in support of this hearsay statement set forth in the affidavit." (emphasis added).

The "records of this office" referred to in the Forms 4340, **Ex. 90**, pertaining to Loglia for 1995 and 1996, must be produced into evidence, and the Service cannot rely upon mere unsupported allegations of non-existent documents.

**160.**   The Forms 4340, **Ex. 90**, do not show that the requirements of law and/or procedure were met.   These certifications only state that the information on the Form 4340 is reflected in the Services records.   There is nothing in the Form(s) 4340 or the certification(s) "verifying" the validity of the assessment, collection activities, or the the liability, nor is there any statement about any requirements of "procedures or law" of any kind being followed or met.

**161.**   The certifications under **Ex. 36, 90** indicate that the "transcript . . . is a true and complete transcript for the period stated."   Nowhere on the so called "complete transcript" (Forms 4340) is it indicated that any Notice of Deficiency, nor any Notice and Demand for Tax, nor any Form 17, was ever sent by the Service.   Loglia never received any valid Notice of Deficiency, Notice and Demand for Tax, Form 17, and other required notices, and the fact that these notices were never sent to him is confirmed by the Forms 4340 provided by the Service.   The IRS's Forms 4340

*36*

found under **Ex. 36, 90** clearly evidence the IRS violations of required law and procedure as pertains to the 95 and 96 tax liabilities they allege Loglia has.

**162.**   The 1995 and 1996 Forms 4340 provided by the Service (**Ex. 90**) show entries dated 4/4/97 and 2/24/98, listing a "Substitute for Return," a "0.00" assessment, and the "assessment dates (23C, RAC 006)" and/or "23C dates" are listed as 5/12/1997 and 3/30/1998. Loglia has requested in every manner conceivable, copies of every assessment, certificate of assessment, summary record of assessment, and records which in any way support such alleged assessment and/or summary records of assessment, made pertaining to Loglia for 1995 and 1996.

**163.**   The Service has NEVER provided any records pertaining to any alleged assessment made on 5/12/1997 and 3/30/1998 that pertain to Loglia. The Service has refused to provide these Summary record(s) of assessment (5/12/97 and 3/30/98), yet the Forms 4340 show they exists, and that said assessments are for 0.00. This is a clear violation of 26 CFR 301.6203-1. The Service appears to be refusing to provide this original assessments because they show Loglia owes no tax pertaining to the return the Service fabricated on his behalf, and because no NO ORIGINAL ASSESSMENTS EXIST pertaining to Loglia for 1995 and 1996.

**164.**   **Ex. 43** is an October 20, 2000 letter from the Service, which directly states that:

> "The Form 23C has been replaced by the RACS report 006. This report is not taxpayer specific, i.e., it contains the total amount of assessments made against numerous taxpayers on a particular day for different tax classes (e.g. income, estate, etc.). The assessments against a specific taxpayer cannot be identified on the RACS report 006. The disclosure office provided you with a copy of your individual master file (IMF) transcript, which, read in conjunction with the RACS-006 report, provide the date of the assessment, the category and the signature of the assessment officer. These meet the requirements of I.R.C. § 6203 and the regulations." (Emphasis added)

The above statement constitutes a party admission by the IRS that the Assessment Officers who

certified, signed, or otherwise executed an assessment against Loglia for 1995 and 1996, examined the 1995 and 1996 IMFTs pertaining to Loglia.

**165.**    The Individual Master File is designed to accumulate in each taxpayer's account all data pertaining to the income taxes for which the taxpayer is liable, and it is the "supporting records," supporting the alleged assessments against Loglia for 1995 and 1996. The alleged "Assessment Officers" Goldenberg, Sinclair and Sands, who signed the alleged assessments against Loglia (**Ex. 3** under Exhibits 2-5; **Ex. 95**); and the alleged "Certifying Officer" Higley, who signed the Forms 4340 (**Ex. 90**) had to have examined the Service's IMFs for 1995 and 1996 and knew or should have known that these IMFTs show Loglia has no tax liability, owes no tax, and is not required to file or make a return. See **Ex. 43**.

**166.**    Defendants failed to comply with 26 USC § 6330(c)(1) and persisted in their defrauding, oppression, harassment, and deception of Loglia, and breach of the duties of their office and/or employment, by knowingly issuing a false and fraudulent determination that the tax liabilities alleged against Loglia for 1995 and 1996 as listed on the NFTL had been properly assessed, and that the collection actions were appropriate. See **Ex. 92**.

**167.**    Freitag and Fisher knew or should have known that the "certification" annexed to the Forms 4340 Freitag provided and based his determination on indicated that the "transcript . . . is a true and complete transcript for the period stated," and were also informed that that nowhere on the so called "complete transcript" is it indicated that any Notice of Deficiency, any Notice and Demand for Tax, nor any Form 17, was ever sent by the Defendants to Loglia. See **Ex. 90**; **Ex. 93**, Trans 17:5-19:11.

**168.**    At the November 19, 2002 hearing, Fisher fraudulently and intentionally stated that the CP 504 letter in Loglia's Exhibits pertaining to 1996 was a Notice and Demand for Tax, while knowing

that said letter did not satisfy the statutory requirements of 26 USC § 6303, and while knowing that the Form 4340 (**Ex. 90**) provided by and used by the Service in making the November 19, 2002 Determination, listed a false entry dated February 8, 1999 for a "Statutory Notice of Balance Due," when the CP 504 letter was dated March 1, 1999. See **Ex. 15**, **93**,Trans. 10:11-13:6.

**169.**   Fisher knew or should have known that her statement at the CDP Hearing that the CP 504 letter was a Notice and Demand For Tax, was incorrect and false.

**170.**   Defendants knew or should have known that the CP 504 letter dated March 1, 1999 they represented to be a "Notice and Demand for Tax," and the "Statutory Notice of Balance Due" listed with a date of February 8, 1999 on their Forms 4340, could not be the same document.

**171.**   Fisher knew or should have known that statement that the Forms 4340 the IRS provided (**Ex. 90**) showed that a Notice and Demand for Tax was sent to and received by Loglia was false.

**172.**   Defendants were informed of and had knowledge of the information stated in paragraphs, 151 - 171, supra.

**173.**   Defendants, while knowing that Loglia had no tax liability or filing requirements for 1995 and 1996, while knowing that required "law" and "procedures" were not followed in the assessment and collection of taxes pertaining to Loglia for 1995 and 1996, with intent to defraud, oppress, and harass and deceive Loglia, and in breach of the duties of their office and/or employment, did willfully and wantonly attempt to obtain sums greater or other than those authorized by law, did ignore the information on the Forms 4340 Freitag and the IRS provided with the October 22, 2002 letter (**Ex. 90,**), and as outlined in paragraphs 151- 171, supra, and fraudulently represented that the said Forms fulfilled the requirements of 26 USC § 6330(c)(1), while knowing that said Forms 4340 were not a verification, were not from the Secretary or a delegate with proper delegation of authority, contained no information verifying that law or

administrative procedures were met, and nowhere indicated that any required "law" or "procedures" were followed, including, but not limited to, 26 USC §§ 6303, 6212, and associated regulations, did, in reckless, intentional, and/or negligent disregard of 26 USC §§ 6303, 6212 and other statutes and regulations, fail to release the NFTL at issue in this case, and did issue the November 19, 2002 determination indicating that the tax against Loglia was properly assessed and their collection actions were appropriate, and all to the damage and detriment of Loglia and in violation of law, including, but not limited to, 26 USC §§ 6330(c)(1), 6330(c)(3)(A), 7214, 7432, and 7433, and in an amount to be determined at trial.

**174.**    The November 19, 2002 Notice of Determination should be reversed and should reflect that Loglia has no tax liability, no filing requirement, and no valid assessments against him for 1995 and 1996, and the NFTL should be released.

**JUDICIAL REVIEW/DAMAGE CAUSE OF ACTION 9**
**FAILURE TO COMPLY WITH 26 USC § 6212 AND**
**OTHER REQUIREMENTS PERTAINING TO "DEFICIENCIES"**

**175.**    Loglia repeats and realleges the allegations of Paragraphs 1 through 174 of this Complaint as though fully set forth herein.

**176.**    The allegations in this cause are referred to in the CDPH Brief, pgs. 56-57.

**177.**    26 USC § 6212 governs Notices of Deficiency.  It declares in pertinent part:

Sec. 6212. - Notice of deficiency

(a) In general
If the Secretary determines that there is a deficiency in respect of any tax imposed by subtitles A or B or chapter 41, 42, 43, or 44 he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail. Such notice shall include a notice to the taxpayer of the taxpayer's right to contact a local office of the taxpayer advocate and the location and phone number of the appropriate office.

**178.**    Defendants knew or were grossly negligent in not knowing that the Secretary did not determine that there is or was a deficiency in respect of any tax imposed by subtitles A or B or chapter 41, 42, 43, or 44 pertaining to Loglia for 1995 or 1996.

**179.**    Defendants knew or were grossly negligent in not knowing that the Secretary did not send any valid or lawful notice of any such deficiency pertaining to any alleged liabilities pertaining to Loglia for 1995 or 1996 by certified or registered mail.

**180.**    The Service sent Loglia a series of letter under **Ex. 39**, which specifically instructed Loglia, "you don't need to do anything further now on this matter." The latest of these letters is dated December 8, 1997.

**181.**    The IMFT is "continuously updated and current record of each taxpayer's account," and "is designed to accumulate in each taxpayer's account **all** data pertaining to the income taxes for which the taxpayer is liable." See **Ex. 10**. (emphasis added)

**182.**    The 1995 and 1996 IMFT's pertaining to Loglia nowhere list any TC 494, which would indicate and reflect the issuance and service of a valid and lawful notice of deficiency, thereby confirming the fact that no such valid and/or lawful notice was ever sent to Loglia. See page 8-20 of the IRS's 1994 6209 Manual, decoding TC 494, **Ex. 38**.

**183.**    The Forms 4340 provided by Defendants pertaining to 1995 and 1996 (**Ex. 90**) nowhere show or reflect that a Notice of Deficiency was ever sent to or received by Loglia.

**184.**    Loglia never received any valid and lawful Notice(s) of Deficiency from Defendants pertaining to 1995 or 1996.

**185.**    Defendants were informed of and had knowledge of the information stated in paragraphs, 175 - 184, supra.

**186.**    Defendants, while knowing that Loglia had no tax liability or filing requirements for 1995

and 1996, while knowing that required "law" and "procedures" were not followed in the assessment and collection of taxes pertaining to Loglia for 1995 and 1996, with intent to defraud, oppress, and harass and deceive Loglia, and in breach of duties of their office and/or employment, did willfully and wantonly attempt to obtain sums greater or other than those authorized by law, and did willfully and wantonly ignore the information presented to them as outlined in paragraphs 175 - 184, supra, and while knowing that the provisions of 26 USC 6212(a) were violated, did, in reckless, intentional, and/or negligent disregard of 26 USC 6212(a) and other statutes and regulations, fail to release the NFTL at issue in this case, and did issue the November 19, 2002 determination indicating that the tax against Loglia was properly assessed and the IRS's collection actions were appropriate, and all to the damage and detriment of Loglia and in violation of law, including, but not limited to, 26 USC §§ 6330(c)(1), 6330(c)(3)(A), 7214, 7432, and 7433, and in an amount to be determined at trial.

187.    The November 19, 2002 Notice of Determination should be reversed and should reflect that Loglia has no tax liability, no filing requirement, and no valid assessments against him for 1995 and 1996, and the NFTL should be released.

## JUDICIAL REVIEW/DAMAGE CAUSE OF ACTION 10
## DEFECTS IN THE ASSESSMENT PROCESS
## AND ASSESSMENT RECORDS

188.    Loglia repeats and realleges the allegations of Paragraphs 1 through 187 of this Complaint as though fully set forth herein.

189.    The allegations in this cause are referred to in the CDPH Brief, pgs. 85-94.

190.    26 CFR 301.6203-1 declares:

The district director and the director or the regional service center shall appoint one

or more assessment officers. The assessment shall be <u>made by an assessment officer signing the summary record of the assessment</u>. The summary record, <u>through supporting records</u>, shall provide <u>identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment</u>. The amount of the assessment shall, in the case of tax shown on a return by the taxpayer, be the amount so shown, <u>and in all other cases the amount of the assessment shall be the amount shown on the supporting list or record</u>. [Emphasis added]

191.    Meade Whitaker, Chief Counsel, IRS, explained the IRS's official interpretation of how an assessment decision is recorded:

"Code § 6201 provides that the Secretary or his delegate is authorized to make assessments of all taxes imposed by Title 26 of the United States Code.

Code § 6203 provides that an assessment shall be made by recording the liability of the taxpayer in the office of the Secretary or his delegate in accordance with rules or regulations prescribed by the Secretary or his delegate. Treas. Reg. §301.6203-1 provides that the date of the assessment is the date the summary record of assessment is signed by an assessment officer.

For the Service to assess any tax, or to credit or refund any over assessment, <u>a summary, assessment list or summary refund list, on which certain data concerning the taxpayer is required to be shown, must be signed by an officer designated to do so.</u>" General Counsel Memorandum (GCM) 35988. (emphasis added).

192.    The 1995 and 1996 Forms 4340 that the IRS provided (**AR. Ex. 36, 90**) list several assessment dates that are relevant. They are 5/12/1997, 3/30/98, 3/2/98 and 2/8/99. The 3/2/98 and 2/8/99 dates are listed on the NFTL at issue. The 1995 and 1996 Forms 4340 list assessment dates of 5/12/1997 and 3/30/98, showing a substitute for return being filed, but the Service has refused to produce these assessments or any supporting records supporting the summary records, and at this point it appears these are fraudulent entries and no such valid assessments exist.

193.    Under **Ex. 3**, under Exhibits 2 and 3, there are RACS Reports-006 bearing assessment dates

5/5/97 and 9/8/97, but these DO NOT match the 5/12/97 and 3/30/98 TC 150 dates listed on the Service's IMFs and Forms 4340. See **Ex. 8, 36, 90**.

194.    Four "Summary Records of Assessment," were provided during the CDP process as Exhibits 3-5 under **Ex. 3**, and are summarized as follows:

| Assessment Date | Certificate Number | Assessment Officer |
|---|---|---|
| 9/8/97 | 13319970908002 | "Rochelle Goldenberg" |
| 5/5/97 | 13319970505006 | "Rochelle Goldenberg" |
| 3/2/98 | 13319980302005 | "Jan Sinclair" |
| 2/8/99 | 13319990208008 | "Francine Sands" |

195.    On each of the above "summary records," each of the alleged assessment officers signed the following certification:

> "I certify that the taxes, penalty, and interest of the above classification, hereby assessed, are specified in supporting records, subject to such corrections as subsequent inquiries and determinations in respect thereto may indicate to be proper."

196.    None of the assessment officers who signed the above summary records examined any Forms 4340, because the Forms 4340 prepared by the Service for 1995 and 1996, were prepared after the assessment dates listed on the summary records.

197.    None of the above alleged assessments satisfy the requirements of 26 CFR § 301.6203-1. No Forms 4340's existed at the time the Assessments were made.

198.    At the time the alleged assessments dated March 2, 1998 and February 8, 1999 for 1995 and 1996 were prepared, the IMFTs the Service prepared pertaining to Loglia for 1995 and 1996 clearly showed he had no filing requirements, no tax liability, and no tax due.

199.    The Forms 4340 pertaining to Loglia for 1995 and 1996 provided by and with Freitag's October 22, 2002 letter (**Ex. 90**), and used in making the November 19, 2002 determination, are a

complete fraud and do not meet the requirements of an "assessment," "summary record of assessment," or "supporting record," as indicated in 26 CFR 301.6203-1.

**200.** The Forms 4340 pertaining to Loglia for 1995 and 1996 provided by and with Freitag's October 22, 2002 letter, identify the "type of tax" as "U.S. Individual Income Tax Return," when there is no type of tax identified anywhere as "U.S. Individual Income Tax Return" in 26 USC or its corresponding regulations. The Forms 4340 are a complete fraud and do not meet the requirements of 26 CFR 301.6203-1.

**201.** The Forms 4340 pertaining to Loglia for 1995 provided by and with Freitag's October 22, 2002 letter, and used in making the November 19, 2002 determination, show an entry dated April 4, 1997, listing a "Substitute for Return," with a "0.00" assessment, and an "assessment date (23C, RAC 006)" listed as May 12, 1997. See **Ex. 90**.

**202.** The Forms 4340 pertaining to Loglia for 1996 provided by and with Freitag's October 22, 2002 letter, and used in making the November 19, 2002 determination, show an entry dated February 24, 1998, listing a "Substitute for Return," with a "0.00" assessment, and an "assessment date (23C, RAC 006)" listed as March 30, 1998. See **Ex. 90**.

**203.** Loglia has repeatedly requested the Defendants provide copies of every assessment, certificate of assessment, summary record of assessment, and records which in any way support such alleged assessment and/or summary records of assessment, made pertaining to Loglia for 1995 and 1996, and the Defendants have NEVER provided any supporting records pertaining to any alleged assessments made on May 12, 1997 or March 30, 1998. The Service has only provided false and fraudulent "Summary Records of Assessment" dated May 12, 1997 and March 30, 1998, and which in no way substantiate, explain, or evidence a "0.00" assessment amount. See IRS's August 13, 2002 response to Loglia's February 7, 2002 FOIA request, **Ex. 82** under Exhibit 2

**204.** Loglia sent the IRS a FOIA request dated February 7, 2002, demanding the production of numerous documents, including, but not limited to, all "summary records of assessment," "assessments," "Assessment Certificates," pertaining to 1995 and 1996.

**205.** In response to the February 7, 2002 FOIA request, the IRS responded by letter dated August 13, 2002, and admitted that numerous documents did NOT exist in their records. See **Ex. 82**.

**206.** The service has admitted that there is no stamped block folder of assessment source documents pertaining to Loglia; no documents which support any and all assessments made against Loglia for 1995 and 1996, including, but not limited to, any and all "Assessment lists and document registers" supporting any and all Forms 23-C, Assessment Certificates and/or RACS-006 which pertain to Loglia; no Accounting Assessment Journal(s), Assessment list(s), supporting documents, or ledger entry(ies) pertaining to any and all assessments made in reference to Loglia; no documents evidencing any delegation of authority, credentials, or job history to any individual who signed any alleged assessments pertaining to Loglia for 1995 and 1996; nor any documents evidencing any delegation of authority, credentials, or job history of any individuals who signed any and all forms 4340 pertaining to Loglia for 1995 and 1996. See **Ex. 82, 83**, Items 11-13, 28, 37-41.

**207.** The IRS records clearly show that 26 CFR § 6203-1, has not been followed and that the assessments against Loglia for 95 and 96 are invalid, fraudulent, and fabricated.

**208.** The Form 23-C and the RACS report are two different documents. There are no Form(s) 23C, no "assessment source documents" (which would be stamped as stated above per the IRM), and no signed "Assessment Certificates," pertaining to any alleged assessments against Loglia for 1995 and 1996. See **Ex. 59, 60, 61**.

**209.** The Defendants violated 26 CFR 301.6320-1 by not possessing, and failing to provide Loglia with a copy of, the April 4, 1997 and February 24, 1998 alleged assessments, which are the original assessment as pertains to the 1995 and 1996 tax liabilities listed on the NFTL at issue in this case.

**210.** Defendants knew or were grossly negligent in not knowing that there are no valid and lawful assessments against Loglia pertaining to the tax liabilities the Defendants allege Loglia has for 1995 and 1996.

**211.** The assessment dated March 2, 1998, and February 8, 1999 as listed on the NFTL as issue in this case, does not meet the criteria of 26 CFR 301.6203-1, and were signed by Sinclair" and Sands, respectively.

**212.** There are no valid and lawful Summary Records of Assessments pertaining to the March 2, 1998, and February 8, 1999 assessments as listed on the NFTL as issue in this case, that meet the criteria of 26 CFR 301.6203-1 and other law and regulations. A copy of the Summary Record of Assessment dated March 2, 1998, allegedly reflecting the purported March 2, 1998 assessments listed on the NFTL, bearing certificate number 13319980302005, and signed by Sinclair, is found under **Ex. 4**, under Exhibit 3. A copy of the Summary Record of Assessment dated February 8, 1999, allegedly reflecting the purported February 8, 1999 assessments listed on the NFTL, bearing certificate number 13319990208008, and signed by Sands, is found under **Ex. 4**, under Exhibit 4.

**213.** Defendants directly stated and admitted that the supporting documents to the Summary Record of Assessment dated March 2, 1998 and February 8, 1999 are the 1995 and 1996 IMFT's the IRS prepared in reference to Loglia. See **Ex. 8, 9, 10, 43**.

**214.** The fact is that there are absolutely no assessment(s) that meet the above criteria pertaining to Loglia, particularly the assessments dated 3/2/98 and 2/8/99 which appear listed on the NFTL at

issue in this case, and the alleged assessments dated 5/12/97 and 3/30/98 listed on the IRS Forms 4340. See **Exhibit 36**.

215.  Loglia's April 17, 2001 FOIA request to the Service, **Ex. 79**, requested a number of documents, including, but not limited to, the following:

> **3.0**   **Please send me a copy of all documents maintained in a system of records identified as Treasury/IRS 24.046, "Business Master File (BMF), Taxpayer Services--Treasury/IRS," which pertain to me.**

> **4.0**   **Please send me a copy of both sides of Form 813, Screen 040, and other Non-Master File assessment documents pertaining to me.**

> **6.0**   **Please send me a copy of any and all Form(s) 23-C pertaining to me.**

> **7.0**   **Please send me a copy of the block folder of assessment source documents pertaining to me stamped with the following impression:**

> > **a. ASSESSMENT JOURNALIZED**
> > **b. 23C** _____
> > **by** _____

> **9.0**   **Please provide me with copies of the Accounting Assessment Journal, the Assessment list, supporting documents, and the ledger entry(ies) pertaining to any and all assessments made in reference to me.**

216.  Via its various responses to Loglia's FOIA requests, the Service has admitted that, for 1995 and 1996, it has no documents which support any and all assessments made against Loglia for 1995 and 1996, including, but not limited to, Accounting Assessment Journal(s), Assessment lists, Forms 813, stamped block folders of assessment source documents, accounting assessment journal(s), document registers, no supporting documents supporting the summary records of assessment and/or assessments, or ledger entries, nor any documents evidencing any valid delegation of authority, credentials, or job history of any individuals who signed any and all Forms

4340 pertaining to Loglia for 1995 and 1996. See **Ex. 59-61, 79, 82**, Items 11-13, 18-22, 28; **Ex. 83, 95**. This is a direct violation of 26 CFR § 301.6203-1.

**217.** The RACS - 006 reports (Exhibits 3-5 under **Ex. 3**) bear a certification, to wit:

> "I certify that the taxes, penalty, and interest of the above classifications, hereby assessed, are specified in supporting records, subject to such corrections as subsequent inquiries and determinations in respect thereto may indicate to be proper."

**218.** The alleged assessment officers who executed the 5/12/97, 3/30/98, 3/2/98, and 2/8/99 alleged assessments, lied in their certification, because the Service has admitted well after the alleged assessment dates, that there are NO RECORDS SUPPORTING THE SUMMARY RECORDS pertaining to 1995 and 1996. See **Ex. 79**

**219.** The Forms 4340 provided by the Service pertaining to Loglia for 1995 and 1996 found under **Ex. 36**, dated January 29, 2000 and June 2, 1999, have NO DATE appearing under the column referencing the "23C" assessment dates of 5/12/97 and 3/30/98, thereby clearly indicating that there is no original assessment pertaining to the 3/2/98 and 2/8/99 assessments listed on the NFTL at issue in this case. There is no "original assessment," and there can be no records supporting a non-existent assessment.

**220.** On the date the May 12, 1997, March 30, 1998, March 2, 1998 and February 8, 1999 assessments against Loglia were made, neither Sinclair, Sands, nor Goldenberg, nor the position(s) they held, had proper delegation of authority to allow them and each of them and/or the person holding said position(s) to act as an assessment officer or to sign summary records of assessments. See **Ex. 95**

**221.** On the date the March 2, 1998 assessment against Loglia was made, Sinclair did not hold the position of "Chief, Post Processing Division," "Chief, Accounting Branch," or "Night

Manager," did not have authority to act as an assessment officer, and did not hold a position to which authority was delegated to sign and certify the Summary Records of Assessments pertaining to Loglia. See **Ex. 82**, Items 11-13, 18-22, 28; **Ex. 83, 95**.

222.    On the date the February 8, 1999 assessment against Loglia was made, Sands did not hold the position of "Chief, Post Processing Division," "Chief, Accounting Branch," or "Night Manager," and did not have authority to act as an assessment officer, and did not hold a position to which authority was delegated to sign and certify the Summary Records of Assessments pertaining to Loglia. See **Ex. 82**, Items 11-13, 18-22, 28; **Ex. 83, 95**.

223.    On the date the February 8, 1999 assessment against Loglia was made, Goldenberg did not hold the position of "Chief, Post Processing Division," "Chief, Accounting Branch," or "Night Manager," and did not have authority to act as an assessment officer, and did not hold a position to which authority was delegated to sign and certify the Summary Records of Assessments pertaining to Loglia. See **Ex. 82**, Items 11-13, 18-22, 28; **Ex. 83, 95**.

224.    Neither the Summary Record of Assessment pertaining to the March 2, 1998 and February 8, 1999 assessments as listed on the NFTL as issue in this case, nor the Forms 4340 provided by Freitag and the Defendants, provide the character of the liability assessed against Loglia for 1995 and 1996. See **Ex. 90**.

225.    Neither Sinclair, Sands, nor Goldenberg did examine any Forms 4340 when they prepared the Summary Record of Assessment dated March 2, 1998, February 8, 1999, May 12, 1997, and September 8, 1997.

226.    The IMFT's pertaining to Loglia for 1995 and 1996 were all or part of the "supporting records" examined by Sinclair, Sands, and Goldenberg when they prepared the Summary Records of assessment dated March 2, 1998, February 8, 1999, May 12, 1997, and September 8, 1997, and

particularly the March 2, 1998 and February 8, 1999 assessments as listed on the NFTL as issue in this case. See **Ex. 10**.

227.    Defendants knew or should have known that the 1995 and 1996 IMFT's pertaining to Loglia clearly show that Loglia has no tax liability, no tax due, and no filing requirement for 1995 and 1996. See **Ex. 8**.

228.    Defendants knew or were grossly negligent in not knowing that no valid and lawful Forms 23C or Summary Records of Assessment were ever prepared pertaining to the assessment dated March 2, 1998 and February 8, 1999 as listed on the NFTL at issue in this case.

229.    There is no supporting list or record supporting the Summary Record of Assessment pertaining to the March 2, 1998 and February 8, 1999 assessments made by the Defendants against Loglia as listed on the NFTL at issue in this case, and as required by the Defendants' own manuals and procedures and 26 CFR 301.6203-1. See IRS General Counsel Memorandum 35988.

230.    None of the assessed taxes listed on the March 2, 1998 and February 8, 1999 Summary Records of Assessment pertaining to the NFTL as issue in this case, pertain to Loglia, and the Defendants have no evidence that they pertain to Loglia.

231.    No block folder of assessment source documents exist pertaining to the Summary Record of Assessment dated March 2, 1998 and February 8, 1999, nor to the assessments listed on the NFTL at issue in this case, as required by the IRS's own manuals and procedures. See **Ex. 59**.

232.    No Assessment lists or document registers exist supporting the Summary Record of Assessment dated March 2, 1998 and February 8, 1999, nor the assessment listed on the NFTL at issue in this case.

233.    No ledger entry(ies) exist pertaining to the Summary Record of Assessment dated March 2, 1998 and February 8, 1999, nor to the assessment listed on the NFTL at issue in this case.

**234.** Sinclair, Sands, and the Defendants, knew or should have known that there are no supporting records or source documents supporting the March 2, 1998 and February 8, 1999 assessment or Summary Record of Assessment, as listed on the NFTL at issue in this case.

**235.** Defendants were informed of and had knowledge of the information stated in paragraphs, 188 - 234, supra.

**236.** Defendants, while knowing that Loglia had no tax liability or filing requirements for 1995 and 1996, while knowing that required "law" and "procedures" were not followed in the assessment and collection of taxes pertaining to Loglia for 1995 and 1996, with intent to defraud, oppress, and harass and deceive Loglia, and in breach of the duties of their office and/or employment, did willfully and wantonly attempt to obtain sums greater or other than those authorized by law, and did willfully and wantonly ignore the information presented to them as outlined in paragraphs 188 - 234, supra, and while knowing that the March 2, 1998 and February 8, 1999 assessments listed on the NFTL at issue in this case were invalid, that the summary record of assessment pertaining to said March 2, 1998 and February 8, 1999 assessments were fraudulent and violated 26 CFR 301.6203-1, did, in reckless, intentional, and/or negligent disregard of 26 CFR § 301.6203-1 and other statutes and regulations, did fail to release the NFTL at issue in this case, and did issue the November 19, 2002 determination indicating that the tax against Loglia was properly assessed and the IRS's collection actions were appropriate, and all to the damage and detriment of Loglia and in violation of law, including, but not limited to, 26 USC §§ 6330(c)(1), 6330(c)(3)(A), 7214, 7432, and 7433, and in an amount to be determined at trial.

**237.** The November 19, 2002 Notice of Determination should be reversed and should reflect that Loglia has no tax liability, no filing requirement, and no valid assessments against him for 1995 and 1996, and the NFTL should be released.

## JUDICIAL REVIEW/DAMAGE CAUSE OF ACTION 11
## FRAUDULENT SUPPLEMENTAL ASSESSMENTS

**238.** Loglia repeats and realleges the allegations of Paragraphs 1 through 237 of this Complaint as though fully set forth herein.

**239.** The allegations in this cause are referred to in the CDPH Brief, pgs. 67, 93.

**240.** The 1995 and 1996 IMFT's pertaining to Loglia list a TC 150, "SFR" entry dates of May 12, 1997 and March 30, 1998, and 0.00 assessment amounts due.

**241.** The TC 150 reflects "Return Filed & Tax Liability Assessed," and "indicates the Master File Entity was created from the posting of the return." See IRS's 6209 Manual at page 8-8, **Ex. 12, 29** at G-2.

**242.** The Forms 23C, summary records of assessment, assessment certificates, assessments, and all supporting records pertaining to the postings of the TC 150 dated May 12, 1997 and March 30, 1998 on Loglia's 1995 and 1996 IMF transcripts were requested by Loglia and were never provided by the IRS.

**243.** Treasury Regulation 301.6204-1, states:

> "If an assessment is incomplete or incorrect in any material respect, the district director or the director of the regional service center, subject to the restrictions with respect to the assessment of deficiencies in income, estate, gift, chapter 41, 42, 43, and 44 taxes, and subject to the applicable period of limitation, may make a **supplemental assessment** for the purposes of completing the **original assessment**." (emphasis added).

**244.** Defendants knew or were grossly negligent in not knowing that a supplemental assessment is different and distinct from an original assessment.

**245.** The original assessments made against Loglia as pertain to the 1995 and 1996 liabilities listed in the NFTL at issue in this case, is/are the assessment(s) dated May 12, 1997 and March

30, 1998, as reflected on the IMFT's prepared by the IRS in reference to Loglia for 1995 and 1996, and on the Forms 4340's provided by Freitag and Defendants and used by them to make and issue their November 19, 2002 determination in this matter. See **Ex. 92,**

246. The Defendants have refused to produce the original assessments made against Loglia as pertain to the 1995 and 1996 liabilities, dated May 12, 1997 and March 30, 1998, and as pertain to the 1995 and 1996 alleged liabilities listed in the NFTL at issue in this case.

247. Defendants knew or were grossly negligent in not knowing that the "deficiency" referred to under 26 USC § 6211(a), are the deficiencies which are noticed via a Notice of Deficiency, and pertain exclusively to supplemental assessments, and do not pertain to any assessments made under the authority of 26 USC § 6201.

248. The taxes listed on the 1995 and 1996 IMFTs and the Forms 4340 provided by Freitag were all assessed as supplemental assessments, and are fraudulent because there are no original assessment against Loglia pertaining to those years by the IRS's own admission. See **Ex. 90.**

249. When the alleged original assessments against Loglia dated May 12, 1997 and March 30, 1998 were purportedly made, an assessment officer could not even examine any IMFTs pertaining to said alleged liabilities of 1995 and 1996, but only a fabricated unsigned, unsubstantiated SFR, as this is all that existed in the Defendants' records at that time.

250. The 1995 and 1996 IMFTs clearly shows that the first entry on these transcripts is a TC 150 entered on May 12, 1997 and March 30, 1998, and show a "Return Filed & Tax Liability Assessed," on that date. See **Ex. 8, 9.**

251. No information pertaining to any alleged tax liabilities pertaining to Loglia existed when the May 12, 1997 and March 30, 1998 assessments were made, and there was no "supporting records" for any assessment officer to examine.

252. Defendants were informed of and had knowledge of the information stated in paragraphs, 238 - 251, supra.

253. Defendants, while knowing that Loglia had no tax liability or filing requirements for 1995 and 1996, while knowing that required "law" and "procedures" were not followed in the assessment and collection of taxes pertaining to Loglia for 1995 and 1996, with intent to defraud, oppress, and harass and deceive Loglia, and in breach of duties of Defendants' office and/or employment, did willfully and wantonly attempt to obtain sums greater or other than those authorized by law, and did willfully and wantonly ignore the information presented to them as outlined in paragraphs 238 - 251, supra, and while knowing that the taxes assessed against Loglia for 1995 and 1996 and as listed on the NFTL at issue in this case were all fraudulently assessed as supplemental assessments when no original assessment existed, did, in reckless, intentional, and/or negligent disregard of 26 USC § 6201 and 26 CFR 301.6204-1 and other statutes and regulations, fail to release the NFTL at issue in this case, and did issue the November 19, 2002 determination indicating that the tax against Loglia was properly assessed and the IRS's collection actions were appropriate, and all to the damage and detriment of Loglia and in violation of law, including, but not limited to, 26 USC §§ 6330(c)(1), 6330(c)(3)(A), 7214, 7432, and 7433, and in an amount to be determined at trial.

254. The November 19, 2002 Notice of Determination should be reversed and should reflect that Loglia has no tax liability, no filing requirement, and no valid assessments against him for 1995 and 1996, and the NFTL should be released.

### JUDICIAL REVIEW/DAMAGE CAUSE OF ACTION 12
### FRAUDULENT PREPARATION OF SUBSTITUTE FOR RETURNS

255. Loglia repeats and realleges the allegations of Paragraphs 1 through 254 of this Complaint

as though fully set forth herein.

**256.** The allegations in this cause are referred to in the CDPH Brief, pgs. 65, 86, 93-94.

**257.** 26 USC § 6020(b) reads:

"(b)  Execution of Returns by the Secretary.--
(1)  Authority of Secretary to Execute Return-- If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise."

**258.** Loglia never filed any voluntary self-assessment and/or tax returns or Forms for 1995 or 1996 because he was not required to file any return under any internal revenue law or regulation, he was not made liable for any tax, and had no tax liability for those years, as the Defendants' own records show and support. Loglia filed claims for refund for 1995 and 1996, as found under **Ex. 5 and 6**.

**259.** The 1995 and 1996 IMFT's pertaining to Alexander Loglia list a TC 150 that shows that Substitute(s) for Return were prepared by the IRS for Loglia without his consent on May 12, 1997 and March 30, 1998, and there was no tax due on that return. See **Ex. 29** at G-2. These are also the dates showing a zero assessments on the Forms 4340 provided for the same years. See **Ex. 36**

**260.** The 6209 Manual at page 8-8, for the SFR 150 TC listed on the first page of the 1995 and 1996 IMFs, "indicates the Master File Entity was created from the posting of the return." The TC 150 reflects "Return Filed & Tax Liability Assessed." This is shown in the IRS 's 6209 Manual at page 8-8 which is found under my **Ex. 29** at G-2. The date of the posting of the TC 150s is 5/12/97 and 3/30/98 on the 1995 and 1996 IMF transcripts. But these alleged assessments, and/or the Summary Records of Assessments and/or Forms 23C, were demanded from the Service

and never provide to Loglia.  In addition, the Service has admitted that no documents supporting these non-existant summary records exist either.  See **Ex. 79**.

**261.**   Instead of complying with 26 CFR 301.6203-1, the Service merely provided RACS-006 Forms (See Exhibits 2-5 under **Ex. 3**), which clearly do not fulfill the requirements  of CFR 301.6203-1, and NO RACS-006 FORMS WERE EVER PROVIDED FOR THE 5/12/97 AND 3/30/98 ALLEGED ASSESSMENT DATES LISTED ON THE IMFS AND FORMS 4340.

**262.**   The Service never produced ANY supporting records to the summary record of assessment which  provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment.  This is because, as the Service has admitted, NO  SUCH  RECORDS  EXISTED  AT  THE  TIME  THE  ASSESSMENTS  WERE MADE. See **Ex. 43, 79**.

**263.**   The GAO in GAO/T-AIMD - 06-56, attached hereto as **Ex. 62**, clearly state  that neither RACS reports nor IMFTs can accurately provide the information necessary to comply with  26 USC § 6203 and applicable regulations:

> "IRS's financial statements amounts for revenue, in total and by type of tax, were not derived from its revenue general ledger accounting system (RACS) or its master files of detailed individual taxpayer records.  This is because RACS did not contain detailed information by type of tax, such as individual income tax or corporate tax, **and the master file cannot summarized  the taxpayer information needed to support the amount identified in RACS.**" (emphasis added)

**264.**   As indicated above, the 23C is prepared from RACS, which obviously cannot meet the statutory requirements.  The GAO has clearly indicated that even the IMFTs cannot be used to support a Summary Record of Assessment.  All assessments made against me for 1995 and 1996 are a invalid, improper, fraudulent, and a sham.

**265.**   Defendants  knew  or  were  grossly  negligent  in  not  knowing  that  26  USC  §  6020(b)

authorizes the Secretary to "make such return from his own knowledge and from such information as he can obtain through testimony or otherwise."

266. The SFR's prepared regarding Loglia and filed on May 12, 1997 and March 30, 1998, were prepared on the Secretary's knowledge and obtained information, and shows that there is 0.00 tax due at that time. See **Ex. 8**.

267. Defendants knew or were grossly negligent in not knowing that the May 12, 1997 and March 30, 1998 dates of filing the SFRs pertaining to 95 and 96  are also the listed assessment dates shown on the Forms 4340 Freitag provided Loglia. *See* **Ex. 90**.

268. Defendants knew or were grossly negligent in not knowing that the SFR's filed May 12, 1997 and March 30, 1998 are the source of the original assessments against Loglia for 95 and 96, that they show zero tax due, and that they are made on the Secretary's knowledge and information.

269. Defendants knew or were grossly negligent in not knowing that there was no tax liability against Loglia reflected in the 1995 and 1996 IMFTs or any of Defendants records at the time the SFR's for 1995 and 1996 were prepared as against Loglia.

270. Defendants knew or were grossly negligent in not knowing that there were no records or information available to the Secretary at the time the SFR pertaining to Loglia's 1995 and 1996 alleged tax liability were prepared.

271. The IMFT's pertaining to Loglia contain information posted after the SFRs were prepared, showing that the Defendants knew that Loglia has no tax liability and no filing requirements for 1995 and 1996.

272. Defendants were informed of and had knowledge of the information stated in paragraphs, 255 - 271, supra.

273. Defendants, while knowing that Loglia had no tax liability or filing requirements for 1995

and 1996, while knowing that required "law" and "procedures" were not followed in the assessment and collection of taxes pertaining to Loglia for 1995 and 1996, with intent to defraud, oppress, and harass and deceive Loglia, and in breach of the duties of their office and/or employment, did willfully and wantonly attempt to obtain sums greater or other than those authorized by law, and did willfully and wantonly ignore the information presented to them as outlined in paragraphs 255 - 271, supra, and while knowing that the SFR's prepared in reference to Loglia's alleged tax liabilities for 1995 and 1996 were fraudulent and prepared in violation of 26 USC § 6020(b), did, in reckless, intentional, and/or negligent disregard of 26 USC § 6020(b) and other statutes and regulations, did fail to release the NFTL at issue in this case, and did issue the November 19, 2002 determination indicating that the tax against Loglia was properly assessed and the IRS's collection actions were appropriate, and all to the damage and detriment of Loglia and in violation of law, including, but not limited to, 26 USC §§ 6330(c)(1), 6330(c)(3)(A), 7214, 7432, and 7433, and in an amount to be determined at trial.

274. The November 19, 2002 Notice of Determination should be reversed and should reflect that Loglia has no tax liability, no filing requirement, and no valid assessments against him for 1995 and 1996, and the NFTL should be released.

## JUDICIAL REVIEW/DAMAGE CAUSE OF ACTION 13
## IRS FAILURE TO COMPLY WITH 26 USC § 6303

275. Loglia repeats and realleges the allegations of Paragraphs 1 through 274 of this Complaint as though fully set forth herein.

276. The allegations in this cause are referred to in the CDPH Brief, pgs. 58-63.

277. 26 USC § 6303 declares:

**Sec. 6303. - Notice and demand for tax**

**(a) General rule**
Where it is not otherwise provided by this title, the Secretary shall, as soon as practicable, and within 60 days, after the making of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof. Such notice shall be left at the dwelling or usual place of business of such person, or shall be sent by mail to such person's last known address.

278.    Treasury Decision 1995 was issued by the Commissioner of Internal Revenue on June 12, 1914, and has not been revoked and amended. See **Ex. 41**. TD 1995 clearly states that a Form 17 must be sent out to complete the Government's lien on property belonging to the taxpayer, and directs that it must be issued immediately once an assessed tax remains unpaid.

279.    Loglia has never received any Form 17, nor any Notice and Demand for Tax from the Defendants for 1995 or 1996. See **Ex. 82**, .

280.    Loglia has made repeated demands upon Defendants to produce any and all Form 17 and/or Notice and Demand for Tax that they claim were sent to Loglia pertaining to 1995 and 1996, as well as any and all evidence supporting the fact that these items were actually sent to and/or received by Loglia, as well as any and all delegation of authority orders to the positions held by the persons signing these alleged notices; nevertheless, and the Defendants have provided none of these documents. See **Ex. 82**, Items 68-74; **Ex. 93**,Trans. 10:11-12:24.

281.    Neither the 1995 and 1996 IMFTs pertaining to Loglia, nor the Forms 4340 provided by Freitag, show that the Defendants ever issued or sent any Notice and Demand for Tax and/or Form 17 to Loglia. See **Ex. 8, 90**.

282.    At the November 12, 2002 CDP hearing, Defendant Fisher fraudulently asserted that a CP 504 letter allegedly sent to Loglia constituted a Notice and Demand for Tax, and fraudulently asserted that the Forms 4340 prepared by the Service somehow showed a Notice and Demand for

tax was sent to and/or received by Loglia. See **Ex. 93**, Trans. 11:11-13:6

**283.**    At the November 19, 2002 hearing, Fisher fraudulently and intentionally stated that the CP 504 letter in Loglia's Exhibits pertaining to 1996 was a Notice and Demand for Tax, while knowing that said letter did not satisfy the statutory requirements of 26 USC § 6303, and while knowing that the Form 4340 provided by and used by the Service in making the November 19, 2002 Determination, listed a false entry dated February 8, 1999 for a "Statutory Notice of Balance Due," when the CP 504 letter was dated March 1, 1999. See **Ex. 93**, Trans 11:11-13:6.

**284.**    Fisher knew or should have known that their statement at the CDP Hearing that the CP 504 letter was a Notice and Demand For Tax, was incorrect and false.

**285.**    Defendants knew or should have known that the CP 504 letter dated March 1, 1999 they represented to be a "Notice and Demand for Tax," and the "Statutory Notice of Balance Due" listed with a date of February 8, 1999 on their Forms 4340, could not be the same document.

**286.**    Fisher knew or should have known that statement that the Forms 4340 the IRS provided (**Ex. 90**) showed that a Notice and Demand for Tax was sent to and received by Loglia, was false.

**287.**    This failure of the Defendants to comply with 26 USC § 6303 and applicable regulation clearly invalidates any and all collection activity being used against Loglia for 1995 and 1996, and also means the NFTL at issue in this case is false, fraudulent, oppressive and unlawful.

**288**.    Defendants were informed of and had knowledge of the information stated in paragraphs, 275 - 287, supra.

**289.**    Defendants, while knowing that Loglia had no tax liability or filing requirements for 1995 and 1996, while knowing that required "law" and "procedures" were not followed in the assessment and collection of taxes pertaining to Loglia for 1995 and 1996, with intent to defraud, oppress, and harass and deceive Loglia, and in breach of the duties of their office and/or

employment, did willfully and wantonly attempt to obtain sums greater or other than those authorized by law, and did willfully and wantonly ignore the information presented to them as outlined in paragraphs 275 - 287, supra, and while knowing that the IRS never sent, and that Loglia never received any Notice and Demand for Tax or Form 17 and that 26 USC § 6303 was directly violated, did, in reckless, intentional, and/or negligent disregard of 26 USC §6303 and other statutes and regulations, did fail to release the NFTL at issue in this case, and did issue the November 19, 2002 determination indicating that the tax against Loglia was properly assessed and the IRS's collection actions were appropriate, and all to the damage and detriment of Loglia and in violation of law, including, but not limited to, 26 USC §§ 6330(c)(1), 6330(c)(3)(A), 7214, 7432, and 7433, and in an amount to be determined at trial.

**290.**    The November 19, 2002 Notice of Determination should be reversed and should reflect that Loglia has no tax liability, no filing requirement, and no valid assessments against him for 1995 and 1996, and the NFTL should be released.

## JUDICIAL REVIEW/DAMAGE CAUSE OF ACTION 14
## ERRORS PERTAINING TO PENALTIES

**291.**    Loglia repeats and realleges the allegations of Paragraphs 1 through 290 of this Complaint as though fully set forth herein.

**292.**    The allegations in this cause are referred to in the CDPH Brief, pg. 54.

**293.**    26 USC § 6671 states:

"26 USC § 6671, RULES FOR APPLICATION OF ASSESSABLE PENALTIES.

(a)    Penalty Assessed As Tax.    The penalties and liabilities provided by this subchapter shall be paid upon notice and demand by the Secretary, and shall be assessed and collected in the same manner as taxes. Except as otherwise provided, any reference in this title to "tax" imposed by this title shall be deemed also to refer

to the penalties and liabilities provided by this subchapter."

294.   The IRS's 95 and 96 IMFs show Loglia is being held liable for penalties.

295.   Loglia have never received any notice and demand for payment from the Secretary for any penalties or liabilities provided by Subchapter B. Therefore, any penalties applied to the 95 and 96 tax liabilities the Service claims Loglia has, are fraudulent and unlawfully assessed.

296.   The IRS's own clear information provided to Loglia in its IMFTs for 1995 and 1996, clearly show Loglia has no filing requirement for those years, no tax liability, and not tax due. The page from the CP 22E letter under **Ex. 7** makes it very clear that Loglia is NOT to be made liable for penalties incurred based upon information obtained from the Service's materials, information, publications, and documents, including the IMF's pertaining to me.

297.   As the IMFT is a "complete transcript" of account, this information could reasonably be relied upon by Loglia to determine whether he had a tax liability and a filing requirement, which he does not. See **Ex. 10, 11**. Any and all penalties and associated interest against Loglia for 95 and 96 pertaining to "not filing" must be released, expunged, and removed from his account.

## JUDICIAL REVIEW/DAMAGE CAUSE OF ACTION 15
## NOTICE OF FEDERAL TAX LIEN IS FATALLY FLAWED

298.   Loglia repeats and realleges the allegations of Paragraphs 1 through 297 of this Complaint as though fully set forth herein.

299.   The allegations in this cause are referred to in the CDPH Brief, pgs. 68-71.

300.   The NFTL at issue in this case (**Ex. 1**) was signed in violation of New York Law, and is not properly certified, making it not entitled to be filed in the records of the Office of the City Register, New York County, State of New York, pursuant to New York Consolidated Laws,

Liens, Article 10-A, § 244.

**301.**   The NFTL at issue in this case was signed by an unknown person that falsely represented or personated one "R M CONNOLLY" by typing the name R M CONNOLLY and by executing the NFTL under such pretense.

**302.**   The unknown party that falsely represented or personated R M CONNOLLY by typing the name R M CONNOLLY and executing the NFTL in issue, thereafter did cause the same to be filed in the Office of the City Register, New York County, State of New York, and did so in violation of New York Consolidated Laws, Penal Law §§ 175.30, § 175.40, 190.25.

**303.**   The NFTL at issue in this matter was NOT certified by the Secretary of Treasury of the United States or his delegate, or by any official or entity of the United States responsible for filing or certifying of notice of any other lien.

**304.**   The person who signed and/or executed the NFTL at issue in this case did so without proper delegation of authority from the Secretary, and was not authorized in any manner to prepare, execute, produce, sign, and/or file the NFTL.

**305.**   The NFTL was filed in violation of New York Consolidated Laws, Real Property Law § 330.

**306.**   The NFTL at issue in this case was not certified in accordance with New York Consolidated Laws, Liens, Article 10-A § 244.

**307.**   The Secretary of Treasury - Governor of the IMF and The World Bank, by and through his/its agents R M CONNOLLY, and the unknown party that signed for R M CONNOLLY, did conspire together and with each other to maliciously execute and file a false and fraudulent lien in the Office of the City Register, New York County, State of New York, purporting to encumber and cloud the title to any and all of the property of the Loglia, all in violation of New York

Consolidated Laws, Penal Law §§ 175.30, 175.35, 175.40.

**308.**   26 USC § 6321 is submitted as Loglia's **Ex. 45** and states:

"if any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional interest, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

**309.**   The regulation implementing 26 USC § 6321 is 26 CFR 301.6321-1, which is listed as "Lien for Taxes," and only and exclusively mentions the application of a lien in relation to qualified state income tax, and the ONLY authority listed in relation to this lien power under this regulation is Treasury Decision 7577, which pertains ONLY AND SPECIFICALLY to qualified state income taxes. See **Ex. 45**, 26 CFR 301.6321-1 and TD 7577.

**310.**   The NFTL at issue in this case in no way pertains to any qualified state income taxes or any interest pertaining to same.

**311.**   Defendants knew or were grossly negligent in not knowing that The NFTL at issue in this case is based upon a fraudulent and unlawful application of 26 CFR 301.6321-1 and 26 USC § 6321.

**312.**   Defendants were informed of and had knowledge of the information stated in paragraphs, 298 - 311, supra.

**313.**   Defendants, while knowing that Loglia had no tax liability or filing requirements for 1995 and 1996, while knowing that required "law" and "procedures" were not followed in the assessment and collection of taxes pertaining to Loglia for 1995 and 1996, with intent to defraud, oppress, and harass and deceive Loglia, and in breach of the duties of their office and/or employment, did willfully and wantonly attempt to obtain sums greater or other than those authorized by law, and did willfully and wantonly ignore the information presented to them as

outlined in paragraphs 298 - 311, supra, and while knowing that the NFTL at issue in this case violated and was filed in violation of numerous Nevada statutes, and while knowing that the NFTL was filed without lawful authority and without meeting the requirements of 26 CFR  301.6321-1, did, in reckless, intentional, and/or negligent disregard of 26 CFR  301.6321-15 and other statutes and regulations, did fail to release the NFTL at issue in this case, and did issue the November 19, 2002 determination indicating that the tax against Loglia was properly assessed and the IRS's collection actions were appropriate, and all to the damage and detriment of Loglia and in violation of law, including, but not limited to, 26 USC §§ 6330(c)(1), 6330(c)(3)(A), 7214, 7432, and 7433, and in an amount to be determined at trial.

314.    The November 19, 2002 Notice of Determination should be reversed and should reflect that Loglia has no tax liability, no filing requirement, and no valid assessments against him for 1995 and 1996, and the NFTL should be released.

### JUDICIAL REVIEW/DAMAGE CAUSE OF ACTION 16
### UNLAWFUL AND UNAUTHORIZED DISCLOSURE OF
### RETURNS, RETURN INFORMATION, AND TAXPAYER RETURN INFORMATION

315.    Loglia repeats and realleges the allegations of Paragraphs 1 through 314 of this Complaint as though fully set forth herein.

316.    The NFTL at issue in this case (**Ex. 1**) was, consisted of, and contained returns, return information, and/or taxpayer return information and clearly defined as such by 26 USC § 6103(b)(2) and § 6103(b)(3), and further, said information was in fact "confidential" pursuant to 26 USC § 6103(a); 26 USC § 7213 (a)(1), (2), and (3).

317.    Defendants, without legal authority, did unlawfully print and publish Loglia's confidential and secret returns, return information, and taxpayer return information, in the public records of the

Office of the City Register, New York County, New York in the form of the NFTL (**Ex. 1**), all in violation of law, including, but not limited to, 26 USC § 7213 (a)(1),(2), and (3); and all to the damage and detriment of Loglia, and did so outside the scope of any tax collection activity.

318.    Sinclair, did, without authority, inspect Loglia's confidential and secret returns, return information, and taxpayer return information pertaining to 1995 and 1996, on or about the time she prepared, executed, and or signed the Summary Records of Assessments dated March 2, 1998, and as found at **Ex. 3,** under Exhibit 4, all in violation of 26 USC §§ 6103, 7213A, and 7431(a), and all to the detriment and damage of Loglia, including, but not limited to, loss of credit, slander of credit, and loss of livelihood, and in an amount to be determined at trial.

319.    Sands, did, without authority, inspect Loglia's confidential and secret returns, return information, and taxpayer return information pertaining to 1995 and 1996, on or about the time she prepared, executed, and or signed the Summary Records of Assessments dated February 8, 1999, and as found under **Ex. 3**, under Exhibit 5, all in violation of 26 USC §§ 6103, 7213A, and 7431(a), and all to the detriment and damage of Loglia, including, but not limited to, loss of credit, slander of credit, and loss of livelihood, and in an amount to be determined at trial.

320.    Goldenberg did, without authority, inspect Loglia's confidential and secret returns, return information, and taxpayer return information pertaining to 1995 and 1996, on or about the time she prepared, executed, and or signed the Summary Records of Assessments dated May 12, 1997 and March 30, 1998, and as found under **Ex. 3, 95**, all in violation of 26 USC §§ 6103, 7213A, and 7431(a), and all to the detriment and damage of Loglia, including, but not limited to, loss of credit, slander of credit, and loss of livelihood, and in an amount to be determined at trial.

321.    Higley did, without authority, inspect Loglia's confidential and secret returns, return information, and taxpayer return information pertaining to 1995 and 1996, on or about the time she

prepared, executed, and or signed the Forms 4340 provided by Freitag (**Ex. 90**), all in violation of 26 USC §§ 6103, 7213A, and 7431(a), and all to the detriment and damage of Loglia, including, but not limited to, loss of credit, slander of credit, and loss of livelihood, and in an amount to be determined at trial.

## JUDICIAL REVIEW/DAMAGE CAUSE OF ACTION 17
## FRAUDULENT USE OF BATF ENFORCEMENT
## AUTHORITY AND REGULATIONS

**322.**   Loglia repeats and realleges the allegations of Paragraphs 1 through 331 of this Complaint as though fully set forth herein.

**323.**   The allegations in this cause are referred to in the CDPH Brief, pgs. 72-73.

**324.**   Defendants fraudulently used Bureau of Alcohol, Tobacco and Firearms ("BATF") enforcement authority that do apply or relate to any activity that Loglia was or is engaged or engages in, to assess and collect the tax liabilities that are falsely alleged to exist in reference to Loglia.

**325.**   The requirements under Title 26 for filing and liability (26 U.S.C. §§ 6001, 6011, and 6012(a)) are commingled between Title 26 and Title 27 excise taxable activity, and are cited as authority equally for both IRS and BATF functions and activities.   See ATFs Application for Operating Permit Under 26 U.S.C. 5171(d), **Ex. 47**.   This form applies to excise, yet 26 U.S.C. §§ 6001,. 6011, and 6012(a) are cited as authorities.

**326.**   .There is no law in Subtitle A pertaining to "Income Taxes" stating that Loglia is liable for or making Loglia liable for the income tax, stating or requiring  Loglia to make a return, or stating or requiring that Loglia must pay the "income tax", nor are there any cross references to any of the provisions in Subtitle F where Sections 6001, 6011 and 6012 are found.

**327.**   Treasury Delegation Order 120-01 transferred IRS authority to BATF, giving BATF

authority for maintenance of 26 USC Chapters 61 - 80 (Subtitle E, matters pertaining to income tax), and sections 7652 and 7653, as administered and enforced with respect to Chapters 51, 52 and 53 (Subtitle F, which relates to Alcohol, Tobacco, and Firearms related activity). See **Ex. 48**.

**328.**    The USCS Parallel table of Authorities and rules in the CFR lists the rulemaking authority for the various regulations in Title 26 CFR.

**329.**    There are over one hundred particular kinds of income taxes in these regulations.

**330.**    The IRS is required to accurately publish this cross reference of regulations and from where they derive their authority. See 1 CFR § 8.5(a).

**331.**    The Defendant's authority to collect and enforce "income" taxes comes from Subtitle E activity and BATF functions, and Loglia is not engaged in any taxable activity under Subtitle E.

**332.**    The Defendants are fraudulently using Subtitle E enforcement authority out of Title 27 to collect "income" taxes from a different and totally inapplicable Title and subtitle (title 26, subtitle A, etc.). See relevant section of parallel table for Title 26 under **Ex. 49**.

**333.**    Virtually every statute used as against Loglia in the assessment and collection of the alleged tax liability at issue in this matter derives its authority from Title 27. See **Ex. 49**, showing 26 USC §§ 6020, 6201, 6203, 6301, 6303, 6321, 62331-6343, 6601-6602, 6651, 6653, 6671-6672, 7207, 7401, 7403, 7425, 7432, 7601, 7602, 7603, 7604, 7605, 7606, 7608, and 7851, all derive their authority from Title 27, and are all being fraudulently misapplied to activities having nothing to do with title 27 or activities relevant or enforceable thereunder.

**334.**    Loglia is not engaged in any activity enforceable under Title 27, and Defendants have not claimed he is liable for any taxable activity under Title 27.

**335.**    The assessment and collection actions taken by the IRS against Loglia as pertains to the 1995 and 1996 tax liabilities the Defendants allege he has are unlawful, invalid, and without

authority, and based upon a willful misapplication of collection statutes, regulations, and authorities that the Defendants knew or should have known do not pertain to any activities Loglia is involved in.

336.     Defendants were informed of and had knowledge of the information stated in paragraphs, 322 - 335, supra.

337.     Defendants, while knowing that Loglia had no tax liability or filing requirements for 1995 and 1996, while knowing that required "law" and "procedures" were not followed in the assessment and collection of taxes pertaining to Loglia for 1995 and 1996, with intent to defraud, oppress, and harass and deceive Loglia, and in breach of the duties of their office and/or employment, did willfully and wantonly attempt to obtain sums greater or other than those authorized by law, and did willfully and wantonly ignore the information presented to them as outlined in paragraphs 322 - 335, supra, and while knowing that the NFTL and the assessment and collection actions used against Loglia pertaining to his alleged 1995 and 1996 tax liabilities were invalid and without lawful authority, and while knowing that assessment and collection actions pertaining to Title 27 taxable activities were being fraudulently and without authority used against Loglia, did, in reckless, intentional, and/or negligent disregard of said fraudulent assessment and collection activity, did fail to release the NFTL at issue in this case, and did issue the November 19, 2002 determination indicating that the tax against Loglia was properly assessed and the IRS's collection actions were appropriate, and all to the damage and detriment of Loglia and in violation of law, including, but not limited to, 26 USC §§ 6330(c)(1), 6330(c)(3)(A), 7214, 7432, and 7433, and in an amount to be determined at trial.

338.     The November 19, 2002 Notice of Determination should be reversed and should reflect that Loglia has no tax liability, no filing requirement, and no valid assessments against him for 1995 and

1996, and the NFTL should be released.

## JUDICIAL REVIEW/DAMAGE CAUSE OF ACTION 18
## NO LIABILITY FOR ANY TAX UNDER SUBTITLE A

**339.**   Loglia repeats and realleges the allegations of Paragraphs 1 through 338 of this Complaint as though fully set forth herein.

**340.**   The allegations in this cause are referred to in the CDPH Brief, pgs. 74-76.

**341.**   Loglia has no tax liability under the Internal Revenue Code of 1954 and/or Title 26 USC.

**342.**   The Internal Revenue Code, at all times relevant to the 1995 and 1996 tax liabilities alleged on the NFTL at issue in this case (**Ex. 1**), contains absolutely no provisions establishing a "liability" for Loglia for any alleged "income tax" or "1040" type of tax.

**343.**   The Internal Revenue Code, at all times relevant to the 1995 and 1996 tax liabilities alleged on the NFTL at issue in this case, contains ABSOLUTELY NO PROVISIONS establishing any legal requirements or duty that such an alleged "income tax" is required to be paid by Loglia.

**344.**   The Internal Revenue Code, at all times relevant to the 1995 and 1996 tax liabilities alleged on the NFTL at issue in this case, contains ABSOLUTELY NO PROVISIONS authorizing the government or anyone else to asses any such alleged "income" and/or "1040" type of tax against Loglia when neither a return nor a list is filed by a Loglia.

**345.**   The Internal Revenue Code, at all times relevant to the 1995 and 1996 tax liabilities alleged on the NFTL at issue in this case, contains ABSOLUTELY NO PROVISIONS authorizing the government or anyone else to "estimate" any such alleged "income" and/or "1040" type of tax against Loglia when neither a return nor a list is filed by a Loglia.

**346.**   Defendants knew or were grossly negligent in not knowing that Loglia has absolutely no "income tax" liability for 1995 and 1996.

347.   Defendants were informed of and had knowledge of the information stated in paragraphs, 339 - 346, supra.

348.   Defendants, while knowing that Loglia had no tax liability or filing requirements for 1995 and 1996, while knowing that required "law" and "procedures" were not followed in the assessment and collection of taxes pertaining to Loglia for 1995 and 1996, with intent to defraud, oppress, and harass and deceive Loglia, and in breach of the duties of their office and/or employment, did willfully and wantonly attempt to obtain sums greater or other than those authorized by law, and did willfully and wantonly ignore the information presented to them as outlined in paragraphs 339 - 346, supra, did, in reckless, intentional, and/or negligent disregard of 26 USC and related regulations, did fail to release the NFTL at issue in this case, and did issue the November 19, 2002 determination indicating that the tax against Loglia was properly assessed and the IRS's collection actions were appropriate, and all to the damage and detriment of Loglia and in violation of law, including, but not limited to, 26 USC §§ 6330(c)(1), 6330(c)(3)(A), 7214, 7432, and 7433, and in an amount to be determined at trial.

349.   The November 19, 2002 Notice of Determination should be reversed and should reflect that Loglia has no tax liability, no filing requirement, and no valid assessments against him for 1995 and 1996, and the NFTL should be released.

## JUDICIAL REVIEW/DAMAGE CAUSE OF ACTION 19
## LOGLIA HAD NO GROSS INCOME FOR 1995 AND 1996

350.   Loglia repeats and realleges the allegations of Paragraphs 1 through 349 of this Complaint as though fully set forth herein.

351.   The allegations in this cause are referred to in the CDPH Brief, pgs. 2, 19-20, 124.

352.   The amounts as set forth on Loglia's 1040 forms, return(s), schedule(s), and/or

worksheet(s) for the Tax Years 1995 and 1996 (**Ex. 5, 6**) are legally and lawfully correct based upon the legal definition of "Gross income", as defined in 26 United States Code (USC) § 61(a), and as seen by the U.S. Supreme Court in the cases of *James v. United States*, 366 US 213, p. 213, 6 L Ed 2d 246, pp. 2, and *United States v. Burke*, 504 U.S. 229, 119 L Ed 2d 34, 112 S Ct. 1867 (1992) subjecting section 61 to source requirements as well as exclusionary provisions of law.

353.    Loglia did not have any gross income for 1995 and 1996, as he did not have any "items of gross income" (26 CFR § 1.861-8(a)(3)), from any taxable U.S. sources sources listed by the Secretary (26 CFR § 1.861-8(f)(1)), as required by (26 CFR § 1.861-8(a)(4)), to then have any "gross income", pursuant to the rules promulgated by the Secretary.

354.    Any remuneration paid to Loglia for the 1995 and 1996 tax years did not come from any of the specific U.S. sources per 26 CFR §1.861-8(f)(1) and the list of those certainly not exempt in 26 CFR §1.861-8T(d)(2)(iii), as set forth by the Secretary of the Treasury. Any remuneration paid to the Loglia pertaining to 1995 and 1996 is excluded from entry into the law, and thus excluded from the definition of "gross income." This is consistent with the language of the law and the regulations all the way back to 1922.

355.    The Secretary very clearly Ruled in 26 CFR § 1.861-8T(d)(2)(ii)(A) that "exempt income" means any income that is "excluded" from the law." Thus any remuneration paid to Loglia for 1995 and 1996 is excluded from both of these lists, as it is clearly within the definition of "exempt income" as provided by law. 26 CFR §§ 1.861-1(a), -8(a) and 1.863-1(c) all state plainly that these rules are to be used to determine income which is taxable for the purposes of the income tax.

356.    Loglia was not earning "Gross income" nor living abroad during the 1995 and 1996 tax years in question. None of any remuneration paid to Loglia for 1995 and 1996 can be included in gross income under 26 USC § 911, and did not constitute "gross income" to then be deemed

"Wages" governed under 26 USC, Chapter 24.

**357.** The Asseverations of Claimed gross income found under **Ex. 5 and 6** clearly explains that Loglia had no "gross income" and no "items of gross income" for 1995 and 1996, and that the information the Service received from NCI, MVG, FRB, and CSB, apparently in the form of Forms W-2 and 1099, was all in error. There are gross errors in the information the Service most likely used to determine Loglia had some tax liability for 95 and 96, and Loglia was afforded absolutely no chance to challenge these factual errors and been denied due process right in relation to rebutting this false information.

**358.** Both the IRS and the United States Department of Justice look to the U.S. Supreme Court case of *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426 (1955) as the Supreme Court case defining what is "gross income", and in this case the court determined that the intent of §22 was completely transferred over to the 1954 Internal Revenue Code without any substantive change, and the definition of "gross income" as determined by the Court has not changed since 1913.

**359.** The U.S. Source Rules ( §861 of the IRC of 1986, previously §119 of the 1939 IRC) are directly connected to the definition of "gross income" (§61 of IRC of 1954 and 1986; previously §22 of IRC of 1939) by subsection (g) of §22, which is the definition relied upon by the High Court in *Glenshaw* (**Ex. 80-1 -- 80-7.**)

**360.** Since the definition of "gross income" has never changed since 1913, the following definition from *Southern Pacific v. Lowe*, 247 U.S. 330, 335 (1918) reveals that the belief that all remuneration and receipt of money is included in gross income has been repeatedly rejected:

> "**We must reject in this case,** as we have rejected in cases arising under the Corporation Excise Tax Act of 1909 (*Doyle, Collector, v. Mitchell Brothers Co.*, 247 U.S. 179 , 38 Sup. Ct. 467, 62 L. Ed. --, and *Hays, Collector, v. Gauley Mountain Coal Co.*, 247 U.S. 189 , 38 Sup. Ct. 470, 62 L. Ed. --, decided May 20, 1918), **the broad contention submitted in behalf of the government that all**

**receipts-everything that comes in-are income within the proper definition of the term "gross income,"**

361.    In support of his position, Loglia has reasonable cause and good faith as seen by the Treasury Department, pursuant to the most concise rule given to the Commissioner of the IRS, for the acceptable standard for determining reasonable cause and good faith in support of ones actions. 26 CFR § 1.6661-6(b) states in part that even the act of relying upon the words of a "Proposed" regulation in 26 CFR is to deemed by the Commissioner as both reasonable cause and good faith:

> "For example, **reliance on a position contained in a proposed regulation would ordinarily constitute reasonable cause and good faith.**"

362.    This above regulation backs Loglia's application and use of both Permanent and Temporary regulations in the use of Federal Taxation statutes, which the U.S. Supreme Court has well determined to mean what the words in them indicate.

363.    The U. S. Supreme Court continues to hold, even as recently as the early part of 1997 and in the December 2000 case regarding the Presidential Election, that it, and nobody else in this Nation, has the power and authority to ignore any provision, intent, or even a single word of any law (including the internal revenue laws) for any reason, as the law is the law, and for matters other than Constitutional in nature, only the Legislative Branch of the Government has the authority to change, alter, or repeal it.

364.    As evidenced by the law and case law contained in Loglia's Asseveration (**Ex 5, 6**), Loglia's argument is neither based upon, nor surrounding, any claim that the income tax is unconstitutional, any moral objection to the constitutional income tax, nor any religious beliefs that could be claimed to conflict with the implementation of Federal Law, as enacted and approved of by the U.S. Congress. This argument is entirely supported by legal and statutory grounds above and is all that is offered for discussion in this matter.

**365**.   Defendants were informed of and had knowledge of the information stated in paragraphs, 350 - 364, supra.

**366**.   Defendants, while knowing that Loglia had no tax liability or filing requirements for 1995 and 1996, while knowing that required "law" and "procedures" were not followed in the assessment and collection of taxes pertaining to Loglia for 1995 and 1996, with intent to defraud, oppress, and harass and deceive Loglia, and in breach of the duties of their office and/or employment, did willfully and wantonly attempt to obtain sums greater or other than those authorized by law, and did willfully and wantonly ignore the information presented to them as outlined in paragraphs 350 - 364, supra, did, in reckless, intentional, and/or negligent disregard of 26 USC and related regulations, did fail to release the NFTL at issue in this case, and did issue the November 19, 2002 determination indicating that the tax against Loglia was properly assessed and the IRS's collection actions were appropriate, and all to the damage and detriment of Loglia and in violation of law, including, but not limited to, 26 USC §§ 6330(c)(1), 6330(c)(3)(A), 7214, 7432, and 7433, and in an amount to be determined at trial.   The November 19, 2002 Notice of Determination should be reversed and should reflect that Loglia has no tax liability, no filing requirement, and no valid assessments against him for 1995 and 1996, and the NFTL should be released.

### JUDICIAL REVIEW/DAMAGE CAUSE OF ACTION 20
### THE IRS HAS REFUSED TO IDENTIFY THE SPECIFIC TYPE OF TAX
### LOGLIA IS LIABLE FOR, AND WHAT
### STATUTES AND REGULATIONS MAKE HIM LIABLE FOR ANY TAX

**367**.   Loglia repeats and realleges the allegations of Paragraphs 1 through 366 of this Complaint as though fully set forth herein.

**368.**    The allegations in this cause are referred to in the CDPH Brief, pgs. 77-83.  Defendants claimed that Loglia was indebted to them and/or their principals in the sum of $12,761.41 for 1995 and 13,118.89 for 1996 in Federal Reserve Notes or other equivalent sums valued in IMF SRDs, all under false and fraudulent pretense of a "1040 Kind of Tax".  See **Ex. 1**.

**369.**    Defendants knew or were grossly negligent in not knowing, that "1040" is a Form (OMB # 1545-0074) and not a specific kind or type of tax for which Loglia might be held liable, and that the Form "1040" applies to over one hundred different and distinct kinds of tax.

**370.**    Defendants' reference to the "1040" "kind of tax" was used on the NFTL to deceive Loglia as to the specific identity of any specific regulation and specific tax that Loglia was being held liable for, thereby depriving Loglia of due process and equal protection of the law.

**371.**    The Form 4340s provided with  Freitag's October 22, 2002 letter (**Ex. 90**) identify the "type of tax" as "U.S. Individual Income Tax Return."

**372.**    The NFTL at issue in this case, under "Kind of Tax," identifies a "1040" type of tax.

**373.**    There is no type of tax identified anywhere in the Code as "U.S. Individual Income Tax Return," or "1040."  The Forms 4340 are a complete fraud and do not meet the requirements laid out in *Stallard v. U.S.* or 26 CFR 301.6203-1.

**374.**    The NFTL at issue in this case, as well as the Forms 4340 (**Ex. 90**), list a Form 1040, OMB # 1545-0074.

**375.**    IRS Form 1040, OMB  # 1545-0074, is associated with more than one hundred different particular and distinct types of tax, and there is no way of determining from the IRS statutes and regulations, without lawful notice of the specific type of tax and implementing statutes and regulations that make Loglia liable, if these statutes and regulations pertain to Loglia, and if so, which forms Loglia is expected to provide.  Loglia only  recently filed for refunds for 1995 and

1996 as found under **AR. Ex. 5 and 6**, to obtain refund for taxes incorrectly withheld, and to correct an erroneous record based on the false and erroneous W-2s/1099s provided by NCI, MVG, CSB, and FRB.   See 26 USC § 6402 generally, and §§ 6402(c), 7422, and 26 CFR § 301.6402-3. The Form is to be filed for the refund whether a liability actually existed or NOT.

**376.**    Defendants have provided no specific notice of what statutes and regulations apply Loglia or any activity he is engaged in that may be lawfully taxable,  but have instead unilaterally used their computers to impose fraudulent Blocking Series Codes, Activity Codes, and Withholding Agent status, all of which are strictly denied.

**377.**    The three main statutes cited by the IRS in the Privacy Act Notice in the 1040 Instruction Manual are Sections 6001, 6011, and 6012.

**378.**    The legally binding text in 26 USC §§ 6001, 6011, and 6012 does not actually make anyone liable:

> **Sec. 6001.**  Notice or regulations requiring records, statements, and special returns.
> Every person liable for any tax imposed by this title . . .

> **Sec. 6011.**  General Requirements of return Statement, or list.
> (a) General Rule.
> When required by regulations, prescribed by the Secretary, any person made liable
> for any tax imposed by this title. . .

> **Sec. 6012.**  Persons required to make returns of income.
> (a)General Rule.
> Returns with respect to income under Subtitle A shall be made by the following:
> (1)(A) Every individual having for the taxable year gross income. . .

**379.**    26 USC §§ 6001 and 6011 emphasize that Loglia must be liable for the tax before he is obligated to keep records or consult section 6012 to find out how much revenue it is necessary to receive in order to be required to file, yet none of the cited sections specifically state or even imply that Loglia is liable for any particular tax, or indicates how Loglia allegedly became liable for any

"tax".

**380.** The Defendants own records (IMFTs) emphatically show that Loglia is not liable for any taxes for 1995 and 1996, and show Loglia is not required to file a return of any kind.

**381.** Loglia has repeatedly asked the Defendants to identify the specific type of tax they believe he is liable for, and what statutes and regulations impose said tax upon Loglia, but the Defendants have continually refused to supply such information.

**382.** There are certain provisions in Title 26 that specify exactly what activities make a person liable for tax, which are summarized as follows:

    a.    §401(e)(1)(d), "Liability for Tax," make the beneficiaries or recipients of employees trusts liable.

    b.    §3405(d)(1), "Liability for Withholding," makes certain deferred income plans required to withhold liable.

    c.    §3405(a), "Direct Payment by Third parties," makes every person other than an employer who pays wages to an employee liable.

    d.    §4374, "Liability for Tax," makes every person liable who makes, signs, issues, or sells any of the documents and instruments subject to the tax, or those for whose use or benefit the same are made, signed, issued and sold. It relates directly to insurance policies issued by foreign insurers.

    e.    §4401(c), "Persons liable for Tax," makes any person engaged in the business of accepting wagers liable.

    f.    §4980A and §4980B, "Liability for Tax," makes beneficiaries of some health care plan liable for taxes on excess distributions.

    g.    §5005, "Persons Liable for Tax," makes the distillers or importers of distilled spirits liable.

    h.    §5703, "Liability for Tax," makes manufacturers and importers of tobacco products liable.

Loglia is not engaged in any of the above activities that would make him liable for a tax or require him to file or make a return.

**383.** Numerous regulations from 26 CFR very clearly state over and over again that, "to the scope of each tax, the forms used, and the functioning of the IRS with respect thereto is contained

in the applicable regulations," and "Specific information relative to the scope of each tax, the forms used, and the functioning of the IRS with respect thereto is contained in the applicable regulations." See **Ex. 50**.

384.    Numerous parts of the 26 CFR 301.XXXX regulations use the phrase "see the regulation relating to the particular type of tax". See 26 CFR 301.6001-1, 301.6011-1, 301.6065-1, 301.6071-1, etc. Also See **Ex. 52**.

385.    26 USC § 6012 (Persons Required to Make Returns of Income) clearly indicates that returns, with respect to income, must be made as related to Subtitle A of the Internal Revenue Code.

386.    At all times relevant to the alleged tax liabilities listed on the NFTL at issue in this case, Subtitle A of the Code is governed by 26 CFR § 1.1-1.

387.    26 CFR § 1.1-1 has assigned an OMB number to the Return Form for Subtitle A, said number being 1545-0067 which corresponds to IRS Form 2555, Foreign Earned Income, which in no way pertains to Loglia or any activities he is or was engaged in. See **Ex. 53**, Forms 1040, 2555. The OMB number for Form 1040 is 1545-0074. The corresponding Federal Code is 1.23-5 et al., which relates to credits against tax. The valid OMB number for subtitle A refers to *foreign earned income*, and the IRS records show or should show that said form does not apply to me. This designation of a non-existent "1040" type of tax as stated on the face of the NFTL, which related to foreign earned income (which Loglia has no relationship to whatsoever), is further evidence of the Services manipulation of its computer data, and its attempt to attribute a tax liability which does no exist.

388.    The 1999 edition of 26 CFR § 602.101 doesn't even list a form related to 26 C.F.R. § 1.1-1. See **Ex. 54**, 26 CFR § 1.1-1(1999); and 1999 Table, 26 C.F.R. 602.101.

**389.**   This designation of a non-existent "1040" type of tax as stated on the face of the NFTL, which relates to foreign earned income (which Loglia has no relationship to whatsoever), is further evidence of the Defendants manipulation an fabrication of its computer data, and its attempt to attribute a tax liability to Loglia which does not exist.

**390.**   Defendants knew or were grossly negligent in not knowing that Loglia is not involved in any revenue taxable activity specifically pertaining to Subtitle A taxes, and is not required, and has no legal or lawful duty to file or make a Form 1040, Form 2555 or Form 8288 and, if compelled to do so, would be committing perjury.

**391.**   Various attorneys, accountants, CPAs, and others have given Loglia their legal opinion on the requirement to file a "tax return," and they have instructed Loglia that there is no requirement for him to file an income tax return. See Exhibits T, U, and V under **Ex. 55**.

**392.**   The Defendant's own records show, and Defendants know, that the IRS's Form 1040 does NOT apply to Loglia in any manner.

**393.**   Despite Loglia's requests, the Service has never informed him of what kind of tax they believe he is liable for and what Federal Regulation identifies and implements this type of tax. I really have no idea.   The Service has demanded some sort of "tax return" from Loglia in the past.

**394.**   Loglia sent a letter to the Service dated April 15, 1998 letter to the Service, as found under **Ex. 55**.   That letter concluded:

> "In light of ITEMS 1-4 above, please have your District Counsel review the Privacy Act Notice, the Public Law 96-511, IRS Forms, all the Government exhibits, the legal and professional opinions attached to this correspondence, and my questions and concerns outlined herein. If you or your District Counsel finds any error in my personal research this year, or find error in the legal and/or professional opinions that I've received and relied upon, then please advise me immediately and in writing of your findings within the next thirty (30) days from the date of this certified letter. If a response from you or your District Counsel is not received within the next thirty (30) days, then I can only presume that my

research on the Privacy Act Notice, the Public Law, the statutes and regulations, and the OMB Regulations are correct, and that my Legal and Professional Counsel have advised me correctly that there is NO law that makes me liable or requires me to file a Federal U.S. Individual Tax Return Form 1040 for 1996, that your implication in your letter dated March 23, 1998 that I am liable for some tax was in error, and that I received no notice that I am required to keep books and records, and am not required to keep any books and records. I look forward to your reply, and am eager to discuss these matters further. I will be bringing a witness and a stenographer. Please bear in mind the penalties associated with 26 USC Sec. 7214, 26 USC Sec. 7433."

**395.** The Service never responded to the April 15, 1998 letter.

**396.** Loglia sent a FOIA request to the Service dated January 3, 1996, in which he requested, among other things:

> 3.0 Please send me a copy of the document which discloses the identity of the tax for which you assert that I failed to file a form.
>
> 4.0 Please send me a copy of the form which you believe is the form which I failed to file.
>
> 5.0 Please send me a copy of the document which indicated that a search was made for the subject form. See **Ex. 56**.

**397.** The Service refused to identify the form they allegedly determined Loglia "failed" to file, and instead sent Loglia a deceptively drawn letter stating that the above document requests were "questions." The Service's bad faith is evident; they will not even identify the Form they claim Loglia "failed" to file, or what "tax" Loglia is liable for, or the implementing regulation(s) and statute(s). See **Ex. 57**.

**398.** Loglia cannot be left in the unpardonable position of having to prove a negative, that he is not required to pay a particular type of tax; the burden is on the Defendants to make the exact regulations clear from the outset. See *Elkins v. United States*, 364 U.S. 206,218 (1960), *Flores v. U.S.* 551 F.2d 1169, 1175 (9th Cir. 1977). Also see *Portillo v. Commissioner*, 932 F.2d 938, Affirming, reversing and remanding 58 TCM 1386, Dec. 46, 373(M), TC Memo, 190-68 [91

USTC P50, 304].

**399.**   Defendants were informed of and had knowledge of the information stated in paragraphs, 367 - 398, supra.

**400.**   Defendants, while knowing that Loglia had no tax liability or filing requirements for 1995 and 1996, while knowing that required "law" and "procedures" were not followed in the assessment and collection of taxes pertaining to Loglia for 1995 and 1996, with intent to defraud, oppress, and harass and deceive Loglia, and in breach of the duties of their office and/or employment, did willfully and wantonly attempt to obtain sums greater or other than those authorized by law, and did willfully and wantonly ignore the information presented to them as outlined in paragraphs 367 - 398, supra, and while knowing that Loglia was not engaged in any taxable activity, and while knowing that they cannot and did not identify the specific type of tax they allege Loglia is liable for or what statutes and regulations make him liable for any such taxes, as pertains to the NFTL and the assessment and collection actions used against Loglia pertaining to his alleged 1995 and 1996 tax liabilities, did, in reckless, intentional, and/or negligent disregard of 26 CFR 301.6203-1 and other statutes and regulations, did fail to release the NFTL at issue in this case, and did issue the November 19, 2002 determination indicating that the tax against Loglia was properly assessed and the IRS's collection actions were appropriate, and all to the damage and detriment of Loglia and in violation of law, including, but not limited to, 26 USC §§ 6330(c)(1), 6330(c)(3)(A), 7214, 7432, and 7433, and in an amount to be determined at trial.

**401.**   The November 19, 2002 Notice of Determination should be reversed and should reflect that Loglia has no tax liability, no filing requirement, and no valid assessments against him for 1995 and 1996, and the NFTL should be released.

## JUDICIAL REVIEW/DAMAGE CAUSE OF ACTION 21
## THE IRS'S NFTL IS BASED UPON FRAUDULENT ACCOUNTING

**402.**   Loglia repeats and realleges the allegations of Paragraphs 1 through 401 of this Complaint as though fully set forth herein.

**403.**   The allegations in this cause are referred to in the CDPH Brief, pgs. 104-105.

**404.**   Various attorneys, accountants, CPAs, ex-judges and others have given Loglia their legal opinion on a requirement to file a "tax return." There is no requirement for Loglia to file an income tax return. *See* **Ex. 55,** under Exhibits T, U, and V.

**405.**   As Loglia was not and is not required to prepare, file, or make an "income tax" return or any other type of tax return, he did not file a Form 1040 for 1995 and 1996 until he discovered the process to correct Forms W-2 and 1099 pertaining to him, as filed with the Service by third parties, that contained false and fraudulent information.

**406.**   Defendants own records show that Loglia was not required to file or make any tax return for 1995 or 1996, and also show Loglia has no tax liability and owes no tax for this period.

**407.**   Defendants never made an accurate accounting pertaining to the tax liabilities which they allege Loglia has pertaining to 1995 and 1996, and as referenced on the NFTL at issue in this case.

**408.**   Loglia regularly transacts his affairs in gold and silver Coin minted under the authority of 31 USC § 5112.

**409.**   Numerous negotiable instruments made out to Loglia were redeemed in Constitutional gold and silver Coin, whose face value was significantly less than the stated value of the negotiable instruments denominate in IMF/SDRs. The gold and silver Coin which Loglia received upon negotiating the above instruments are legal tender at face value. See 31 USC § 5112, 5103, 5112(h). Also see **Ex. 64**. These negotiable instruments contain false and fraudulent amounts on their face,

and these false and fraudulent amounts were used to incorrectly assess the taxes allegedly assessed against Loglia for 1995 and 1996, and as reflected on the NFTL at issue in this case.

**410.** Defendants issued and were responsible for the issuance of paper obligation and credit emitted through the banks and lending institutions.

**411.** The reality of the comparative values between the gold and silver Coin and the Federal Reserve note was and is well known and recognized. Nevertheless, Defendants, upon information and belief, have made an accounting of Loglia's alleged tax liability by adding the face value of numerous checks and other instruments professing to be redeemable in "dollars" while knowing that no "dollars" changed hands in any of the related transactions, and that the checks were not redeemable in dollars on a one-for-one, "dollar-for-dollar" basis. The Defendants assigned inflated and fraudulent Federal Reserve note/SDRs values to said Coins and related transactions with intent to defraud and oppress Loglia and others.

**412.** Defendants knew or should have known that Federal Reserve notes and debased coinage are not exchangeable on a one-for-one, "dollar-for-dollar" basis with the Constitutional "dollars" gold and silver Coin, and that the economic system and values used by Defendants and their principal(s) violated Article I, Section 8, Clause 5, and Article I, Section 10, Clause 1, and, because said system and values are directly and inseparably related to several international agreements that were not made "under" the authority or the United States, violated Article VI, Clause 2 of the Constitution for the United States of America.

**413.** Defendants knew that the District Court, State of Nevada, and the U.S. District Court, State of Nevada would only accept "dollars" gold and silver Coin on a one-for-one, "dollar-for-dollar" basis, and that the standards and accounting practices being used by Defendants, their attorneys, and their principal, was intended to defraud the public and Loglia. This Court accepted

one such gold Coin as partial payment of this Courts filing fee for this case.

414.   Defendants knew or should have known that Loglia deals in and receives a sum of money in the form and substance of Constitutional gold or silver Coins which are "dollars" and are "legal tender". See 31 U.S.C. §§ 5103, 5112(h). Loglia also tenders payment to others in the same said gold and silver Coin. There was no compulsion to buy or sell, and all parties had reasonable knowledge of the facts. The transactions were completed and Loglia took actual possession of the Coin money by exchanging the checks and other evidences of debt for gold and silver Coin. Loglia then paid the same gold and silver Coin to other parties.

415.   Any of the dealings or transactions Loglia may have had or made in checks, Federal Reserve notes and obligations, or debased coinage were under expressed objection of Loglia.

416.   While knowing that Loglia was not required to file any tax returns, was not liable for any taxes under 26 USC, and had direct evidence of same in its own records, the Defendants, with intent to defraud and oppress Loglia, did treat all funds that were falsely and fraudulently reported by third parties to the IRS via Forms W-2 and 1099 as some sort of "income." See **Ex. 5, 6**.

417.   Defendants filed the NFTL in the public records of Office of the City Register, New York County, State of New York, with intent to extort credit, Federal Reserve notes, and debased coinage from Loglia, and if Loglia did not pay the sums stated on the NFTL, to seize and sell Loglia's property.

418.   Defendants were informed of and had knowledge of the information stated in paragraphs, 402 - 417, supra.

419.   Defendants, while knowing that Loglia had no tax liability or filing requirements for 1995 and 1996, while knowing that required "law" and "procedures" were not followed in the assessment and collection of taxes pertaining to Loglia for 1995 and 1996, with intent to defraud,

oppress, and harass and deceive Loglia, and in breach of the duties of their office and/or employment, did willfully and wantonly attempt to obtain sums greater or other than those authorized by law, and did willfully and wantonly ignore the information presented to them as outlined in paragraphs 402 - 417, supra, and while knowing that the IRS used fraudulent accounting practices and falsified values in calculating Loglia's alleged tax liabilities for 1995 and 1996, did, in reckless, intentional, and/or negligent disregard of 26 CFR 301.6203-1 and other statutes and regulations, did fail to release the NFTL at issue in this case, and did issue the November 19, 2002 determination indicating that the tax against Loglia was properly assessed and the IRS's collection actions were appropriate, and all to the damage and detriment of Loglia and in violation of law, including, but not limited to, 26 USC §§ 6330(c)(1), 6330(c)(3)(A), 7214, 7432, and 7433, and in an amount to be determined at trial.

**420.**   The November 19, 2002 Notice of Determination should be reversed and should reflect that Loglia has no tax liability, no filing requirement, and no valid assessments against him for 1995 and 1996, and the NFTL should be released.

## JUDICIAL REVIEW/DAMAGE CAUSE OF ACTION 22
## VIOLATION OF ADMINISTRATIVE PROCEDURES ACT
## AND DUE PROCESS REQUIREMENTS

**421.**   Loglia repeats and realleges the allegations of Paragraphs 1 through 420 of this Complaint as though fully set forth herein.

**422.**   The allegations in this cause are referred to in the CDPH Brief, pgs. 33-53.

**423.**   At all times relevant herein, the acts, actions, and omissions of Defendants as apply to the NFTL at issue in this case (**Ex. 1**) and the alleged liability of Loglia asserted by Defendants, fall under the scope and purview of the Administrative Procedures Act.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**424.** The act, actions, and omissions of Defendants, at all times relevant herein, did not comply with and did violate the requirements of the Administrative Procedures Act, to the damage and detriment of Loglia.

**425.** The act, actions, and omissions of Defendants, at all times relevant herein, did violate Loglia's secured rights to due process and notice and opportunity to respond, and all to the damage and detriment of Loglia.

**426.** Loglia raised several issues in the administrative record pertaining to unlawful, fraudulent, and unconstitutional international agreements which are reiterated and incorporated herein in their entirety. See CDPH Brief, pgs 121-124.

**427.** These several international agreements violate the fundamental laws of the land and are voidable or void under the Law of Nations and The Vienna Convention on the Law of Treaties, Part V, Section 2.

**428.** Defendants are intergovernmental organizations under the Vienna Convention on the Law of Treaties, Part I, Article 2(1)(i).

**429.** The IRS is not in compliance with the requirements of its own procedures in this case, and Loglia has been denied his right to meaningful due process of law, which includes a proper examination and Examination Interview where he would be given the opportunity to confront and cross-examine the adverse witnesses. Loglia has been denied this right and opportunity.

**430.** Loglia was never presented with an Initial Contact letter regarding the Examination Interview for the years 1995 and 1996, as required by 26 U.S.C. § 7521 and 26 C.F.R. § 601.105. Therefore, the NFTL subsequently issued against him is procedurally illegal, illegitimate, and invalid. This is clear in light of the fact that the law requires the IRS to make proper notification to Loglia regarding his rights before the agency during the administrative process leading up to its

determination and issuance of any NFTL. This is a violation of the Public Law, Statutes of the Congress, and Regulations of the Secretary of the Treasury, all of which were enacted for the purpose of ensuring IRS compliance with the requirements of the Administrative Procedures Act. See **Ex. 93**, Trans. 16:15-17:4.

**431.** Pertaining to 1995 and 1996, Loglia was never presented the Initial Contact letter in the form of the 2201(DO), 2203(DO), 2206(DO), or 2207(DO) letters regarding the Examination Interview as revealed in IRM PART IV § 4253.4(1)(a). This failure to comply with the IRM clearly invalidates the current collection activities underway by the IRS, as well as the NFTL, and is actionable under the statutes which govern this proceeding. See **Ex. 93**, Trans. 16:15-17:4.

**432.** In skipping over the entire Examination process, the IRS never presented Loglia with proper or meaningful notification of the specifics of all his Administrative Due Process Rights, as set forth in the TAMRA of 1988. The IRS did not provide Loglia with Publication(s) 1, 5, 556 and Notice 782, as is required by IRM § 4253.4. This is a violation of Public Law enacted by the U.S. Congress, the IRS's Administrative Process (set forth in the IRM) and my Administrative Due Process Rights. Loglia's expectation to be informed of and provided with his Administrative Due Process Rights is affirmed by the U.S. Supreme Court in the case of *Goldberg v. Kelly*, 397 U.S. 254 (1970). See **Ex. 93**, Trans. 16:15-17:4.

**433.** In skipping over the established procedures, IRS Examination Division failed to provide Loglia with any copies of the prima facie, foundational, substantive, and/or predicate evidence that it has used when preparing its claims against Loglia for 1995 and 1996. However, as shown in *Greene v. McElroy*, 360 U.S. 474, 496-497 (1959), and the following federal cases, the administrative process contains the requirements that the IRS must bear the initial burden of production: *Rapp v. Commissioner*, 774 F.2d 932, 935 (9th Cir. 1985); *Hardy v. Commissioner*,

181 F.3d 1002 (9th Cir. 1999); *Cebollero v. Commissioner*, 967 F.2d 986, 991 (4th Cir. 1992). See **Ex. 93**, Trans. 16:15-17:4.

**434.**   It is not clear how the IRS has reached its determination for 1995 and 1996 pertaining to Loglia, as no administrative due process has been provided. Thus, without an Examination it appears that the IRS might have decided to make a Substitute For Return (SFR) as per 26 U.S.C. §6020(b). However, by doing so, the IRS employee who did so violated the clear statutory limitation on his or her authority and the specific instructions of the Commissioner in the IRM. Both the IRM (Chapter 5200 §5291) and National Delegation Order #182 (Oct. 1990 & 1994) govern IRS actions initiated pursuant to 26 U.S.C. §6020(b). Both laws clearly only allow for the creation of a substitute for return when no return has been filed, and only in the case of Business and Employment Tax Returns. Any such application of 6020(b) pertaining to Loglia is an overstepping of the clear limitation and delineation of the IRS' authority, and the failure to provide any Examination Due Process was a further violation of the published administrative procedures, as 6020(b) does not limit Loglia's individual's right to make a defense and point out amounts that do not belong on a return, as is the case here.

**435.**   By ignoring the established Examination process, IRS employees have both violated the TAMRA of 1988, and failed to protect Loglia's rights within the regulations, as expressed in the Internal Revenue Manual at Part IV §4253.4(1)(a).   The November 19, 2002 Notice of Determination represents a   collaboration in the violation of Loglia's rights secured by by 26 C.F.R. § 601.105(b)(2)(ii). See **Ex. 93**, Trans. 16:15-17:4.

**436.**   As Loglia was afforded no Examination process, no Examiner considered his contentions of a factual nature against its claims--under penalty of perjury and pursuant to its own procedures as supported by the Regulations of the Secretary. The above-cited violations of the Public Law,

Statutes, Manual Provisions, and the Regulations of the Secretary of the Treasury, enacted for the purposes of IRS compliance with the Administrative Procedures Act were actionable by the Appeals Division hearing this case, but they refused to take any meaningful action.

**437.**     In the Service's failure to comply with the provisions that require a proper and meaningful Examination Interview, and the subsequent stripping of Loglia's rights under the above cited regulation, the IRS also failed to give Loglia his rights to make contentions of factual nature against an agency's claims which then leads to my rights to confront and cross examine the government's witnesses.  This right is also affirmed by the U.S. Supreme Court in *Goldberg v. Kelly,* 397 U.S. 254 (1970), and had been denied in this case.

**438.**     In this case, Loglia made contentions of factual nature against the only witness to the facts in this case, that he could ascertain, and in this case the witness testimony is a statement of fact intertwined with their own interpretation of the law.  See **Ex. 5 and 6** regarding the   false information provided by NCI, MVG, CSB, and FRB.  The IRS's information upon which its claim(s) against Loglia are based is erroneous, and Loglia has done all in his power to challenge same through the process as set forth by the Secretary of the Treasury.  Since the IRS claims are about amounts under the law, the IRS's claims must be based upon assertions of fact intertwined with an interpretation of law by a third party of some sort.  If the IRS has other witnesses, it must bring them forward, but it did not even bring the known witnesses forward pursuant to Loglia's right, completely violating Loglia's right to due process.

**439.**     The IRS has violated Loglia's right to make contentions of factual nature and rebut the hearsay evidence against him, as well as the opportunity  to expose the IRS's claims as naked assessments upon their face. In so doing the IRS has effectively barred Loglia from being able to make a defense, in addition to denying him right to be confronted with the testimony against him.

The Hearings Officers in this CDP hearing were empowered and expected to correct these errors, but did nothing. Meaningful "process" requires the presentment of the government's witnesses (*Goldberg v. Kelly* (supra), which only the IRS Examination Division can provide pursuant to National Delegation Order #4 and 26 U.S.C. §7602.)

**440.** The Examination Division violated its own procedures in IRM §4253.4, the TAMRA of 1988, and 26 C.F.R. §601.105 through its failure to inform Loglia of his rights which should have been provided in proper correspondence and also during an Examination Interview.

**441.** The Examination Division and the Collection Division have all failed Loglia by their collective failure to assure that the Examination Process was engaged in and completed as the IRM compels of the Examination Division. This is a direct violation of Loglia's clearly enunciated rights as set forth in the following provision of the Internal Revenue Service's published procedures:

> **IRS Fact Sheet FS-97-5** from http://ftp.fedworld.gov/pub/ors-news/fs-97-05.txt
> "**Taxpayers have a right to expect**  efficient tax administration from the IRS, **including verification that taxes are correctly reported.**"

**442.** By skipping over required and rightful process, the IRS have avoided the required notification as set forth in the Public Laws and statutes (supra), and IRS publications and the IRM as follows:

> Handbook Overview and Basic Examiner Responsibilities at [4.2] 1.6 05/14/99
> Taxpayer Rights
> 1. Examiners have the ongoing responsibility to ensure that **all taxpayer rights are protected and observed**, whether these rights are mandated by statute or provided as a matter of policy.
> 2. Examiners **should be aware of all the rights provided by the IRC, Taxpayer Bill of Rights I & II, the IRS Restructuring and Reform Act of 1998 (RRA 98) and IRS policies.**

This failure of the IRS is a violation of Loglia's administrative due process rights and is clearly

actionable under the law.

443.    The skipping of the Examination Process has obfuscated Loglia's remedy at law in the Administrative process, as the Secretary of the Treasury created Forms 1040, 1040X, and 4852 for the purpose of allowing an individual to correct inaccurate or incorrect information reported against him or her.  The existence of administrative procedures associated to the investigation of claims made on the 1040 and 4852 forms Loglia filed for 1995 and 1996 (**Ex. 5 and 6**) have been obscured by the Service's desire to violate its own established procedures at will. The IRS has effectively barred Loglia from addressing the substance of any claim against him in the manner as the Supreme Court allows the individual in *Goldberg* (*supra*).  See **Ex. 93**, Trans. 16:15-17:4.

444.    The functional employees of the IRS, failed and refused to implement the published and required procedures, will not be able to stand in the face of Loglia's contentions of factual nature offered with his returns on the face of the return, as is Loglia's right per *United States v. Sullivan*, 274 U.S. 259 (1927)), and set forth on the previously provided 1040, 4852, and 8275 Forms (**Ex. 5 and 6**).  All Loglia's rights must be provided and heeded, but were denied in this matter.

445.    Examiners must provide hearings to be able to give consideration to potential counterclaims (IRS FS-97-5 and Handbook Overview and Basic Examiner Responsibilities at [4.2] 1.6 05/14/99). This failure to follow the published guidance illegally barred Loglia's from the exercise of all of his administrative and appeals rights, such as the right to challenge the examiner's position.  The Service's failure to provide Loglia with an opportunity to challenge its undisclosed evidence violates the published administrative guidance, as well as rulings by the U.S. Supreme Court.

446.    The behavior of the IRS in this case exhibited by the Examination and Collections Divisions reveals that the IRS carries on without any regard to the Supreme Court's requirement that Loglia maintains his Sixth Amendment cross-examination and confrontation right in the

Administrative Process and the Secretary's creation of administrative procedures which embrace this right. Loglia was effectively barred from any opportunity to question witnesses and establish as a matter of fact on the Administrative Record that the Service's/Examination's claims are unmerited or insufficient, thus shifting the burden of production back upon the government, as its claims are naked assessments without legal or statutory merit. Such appears to be an attribute of an irrebuttable presumption being made by a process by which Loglia's right to speak and be heard has violated.

**447.**   Examination's failure to adhere to the published process and function in compliance with the standards of administrative process, rights, and law left Loglia with no alternate avenue by which he can establish the facts and affect the record. There is no alternative process to failed Examination-level procedures that can provide for a full and complete hearing with the witnesses being present for confrontation, since Appeals are by nature limited in scope by National Delegation Order #4 and *Ohio Bell Tel. Co, v. PUC* 301 U.S. 292 (1937). Therefore, these Collection actions against me regarding 1995 and 1996 are illegitimate and are being carried out in bad faith, in complete disregard for meaningful administrative due process of law as set forth in *Goldberg* and by the established administrative procedures.

**448.**   The IRS' systemic failure to follow published and applicable procedure is a willful violation of Loglia's Fifth Amendment right to due process of law and Sixth Amendment right to cross-examine witnesses. The following provision of the IRM proves that the Examination Division was informed of, and knowledgeable of the fact that it is required to know that Supreme Court decisions are "the law of the land":

> [4.2] 7.2.9.8 (05-14-1999)Importance of Court Decisions
> 1. Decisions made at various levels of the court system are considered to be interpretations of tax laws and may be used by either examiners or taxpayers to support a position.

2. Certain court cases lend more weight to a position than others. A case decided by the U.S. Supreme Court becomes the law of the land and takes precedence over decisions of lower courts. The Internal Revenue Service must follow Supreme Court decisions. For examiners, Supreme Court decisions have the same weight as the Code.

3. Decisions made by lower courts, such as Tax Court, District Courts, or Claims Court, are binding on the Service only for the particular taxpayer and the years litigated. Adverse decisions of lower courts do not require the Service to alter its position for other taxpayers.

Since the enactment of the RRA of 1998, and the creation of 26 USC §7811(a)(3), this provision of the IRM is now law. Therefore the behavior of the Service and/or the Examination Division and the pending actions by the Collection Division against Loglia are in violation of law and his rights to due process of law as the Secretary has embraced the 5th Amendment as applicable to the IRS, including, but not limited to, 26 C.F.R. § 601.106(f)(1).

449.    The IRS's systemic failure to follow published and applicable procedure is a willful violation of Loglia's Fifth Amendment right to meaningful due process of law, his Sixth Amendment right to cross-examine witnesses, and the ignoring of his returns and associated contentions of factual nature is a violation of his right to redress and make a claim against the government as set forth in the 26 U.S.C. §6402 and its regulations, as well as the First Amendment.

450.    The Examination Division violated its own published procedures, the Internal Revenue Code, and Loglia's Constitutionally guaranteed rights to due process of law by skipping over the Examination process, as it failed to make presentment to Loglia of copies of any of the prima facie evidence used to construct the IRS' claims against Loglia. These violations prevented Loglia from making a timely defense against the incorrect information reported by third parties. See **Ex. 5, 6**; **Ex. 93**, Trans. 16:15-17:4.

**451.**   As Loglia was never officially contacted by Examination or informed of his rights with them, the nonexistent Examiner failed to inform Loglia that the previous procedural violations are subject to review by the National Examination Office Director For Technical Advice, pursuant to 26 C.F.R. §601.105(b)(5)(ii)(a), thereby perpetrating a failure of due process and a naked and actionable violation of Treasury Regulations.

**452.**   The IRS issued no Report of Examination Changes (REC) – as required by the regulations of the Secretary – 30 days due to its violations of the IRM Part IV §4253.4 (4), 26 U.S.C. §7521, Treasury Regulation 26 C.F.R. §601.105, and TAMRA of 1988.  The IRS's failure to provide Loglia with a proper explanation of the audit process and his rights under such process is a naked violation of the IRS' published procedures enacted to ensure IRS compliance with the Administrative Procedures Act is a complete failure of process and actionable under the law. These violation also undermines the legal validity of any Report of Examination Changes, which, to the best of Loglia's knowledge, were never issued in reference to Loglia for 1995 and 1996.

**453.**   The IRS' above failures and violations regarding the proper or meaningful process, caused an improper and illegal determination/assessment regarding an alleged amount of tax owed by Loglia. This notification of the above procedural violations and the Examiner's willful failure to follow the published procedures, Treasury Regulations, and administrative guidance, enacted for the purpose of ensuring IRS's compliance with the Administrative Procedures Act and the administrative rights of the individual, in the concoction of the assessments of tax owed and the alleged Notice of Deficiency, was a violation of Loglia's rights and process.

**454.**   The IRS's non-exitent Examination employees failed to properly process Loglia's case and violated 26 C.F.R. §601.105, the IRM Part IV §4253.4, and TAMRA of 1988 by failing to provide Loglia with meaningful notification of his right and opportunity to meet with the

Examiner's Supervisor. This failure to notify Loglia of this opportunity resulted in a denial of Loglia's due process rights by violating the Internal Revenue laws and Treasury Regulations, enacted for the purpose of ensuring IRS employees' compliance with the Administrative Procedures Act and the honoring of Loglia's rights. The Examiner's failure to follow the published administrative guidance caused Loglia to suffer a significant and undue hardship by violation of his rights as a result of the manner in which the government has failed to properly administer the law.

**455.** The IRS non-existent Examination employees failed to properly process Loglia's case and violated 26 C.F.R. §601.106 and the TAMRA of 1988 by failing to provide Loglia with meaningful notification of his right and opportunity to appeal the Examination Supervisor's determination to the Appeals Office, and cause Loglia to suffer a significant hardship as a result of the manner in which the IRS improperly administered the law.

**456.** These failures of the functional IRS employees handling Loglia's case also include the IRS skipping over his rights as contained in 26 C.F.R. §601.106, the Administrative Procedures Act, and TAMRA of 1988. Loglia was never informed of his right and opportunity to seek Technical Advice from the National Office on the procedural issues, pursuant to 26 C.F.R. § 601.106(f)(9). Had Loglia been able to exercise this right, he might have resolved questions of both the procedures and the nature of my exact due process rights at the Examination level and resolved the issues contained in this brief.

**457.** Loglia was not informed of his right and opportunity to appeal the Appeals Officer's determination to the Appeals Supervisor which is an integral part of the administrative process, and was thereby a denied meaningful due process rights and suffered violation of the Internal Revenue Code and Treasury Regulations, enacted for the purpose of ensuring IRS employees' compliance with the Administrative Procedures Act.

**458.** The functional IRS employees handling Loglia's case violated 26 U.S.C. §6212 and his due process rights by failing to create a Notice of Deficiency executed by an Appeals Officer as required by the IRM.

> **Internal Revenue Manual Section 512 (1-5-83)**        **8(24)50**
> "Preliminary Notices of Deficiency" Procedure"
>
> "...(5) The [Deficiency] Notice is signed in pen and ink on behalf of the Commissioner by approving Appeals Officer... Any copies of the statutory notice letter which are used for the originals, or duplicate original, should have a hand-written signature and not a facsimile or reproduced signature..."

**459.** In consideration of all of the denials and violations of Loglia's administrative due process rights by the IRS Examination and Appeal Divisions, the supervising IRS Officers, including, but not limited to, Brush, should have intervened and halted the forward motion in this case. This preponderance of evidence questioning the legitimacy and validity of the Notice of Deficiency (the existence of which is denied) and NFTL, the actions of all involved IRS officials ignoring all of the above issues, compounds the procedural errors of the IRS employees involved, and clearly demonstrates that Loglia was barred from having any means of exhausting all administrative remedy.

**460.** The lack of issuance of any valid, lawful, or other Notice of Deficiency, Notice and Demand for Tax, or Form 17, and the issuance of the NFTL against Loglia, for 1995 and 1996, renders the NFTL procedurally invalid and illegal, since the claims concocted against Loglia are without any proper legal or evidentiary foundation thereby making these claims naked and legally unenforceable. The defects of the claims of the IRS, including the lack of any deficiency of record, as shown above, render the issuance of the NFTL by Collections as an attempt to deprive Loglia of his property under the color of law.

**461.** The IRS has completely violated  substantive and procedural due process requirements in

this matter as pertains to Loglia, and subsequently violated Loglia's secured rights, including, but not limited to, due process of law.

462.   The November 19, 2002 Notice of Determination should be reversed and should reflect that Loglia has no tax liability, no filing requirement, and no valid assessments against him for 1995 and 1996, and the NFTL should be released.

## CAUSE OF ACTION 23
## SYSTEMATIC SCHEME TO OVERTHROW VARIOUS CONSTITUTIONAL PROVISIONS AND FOREIGN AGENTS REGISTRATION ACT

463.   Loglia repeats and realleges the allegations of Paragraphs 1 through 462 of this Complaint as though fully set forth herein.

464.   The allegations in this cause are referred to in the CDPH Brief, pgs. 107-123

465.   At all times herein complained of, Defendants and their principal(s) refused to take cognizance of or act within or under any moral or constitutional limitations and obligations.

466.   Defendants and their principal(s) knew or should have known the the International Monetary Fund (IMF) and the International Bank For Reconstruction And Development (World Bank) are sister international organizations that engage in joint ventures in foreign Nations, and seek and obtain funds from the American taxpayers to finance, implement and guarantee payment of their foreign programs and projects.

467.   Defendant, and each of them, continually conspired together and with each other to violate the Foreign Agents Registration Act of 1938, as amended, with intent to further their fraudulent and unlawful international systematic scheme and to implement and enforce a new international economic order, and all the damage and detriment of Loglia. See **Ex. 80**.

468.   Defendants, were at all times herein complained of, acting as agents of foreign principals and were soliciting and collecting contributions, loans, money, or other things of value for Mexico

and several other Nations. Defendants knew that the State Department cosigned another note to pay the debts of Mexico in 1984 after the overthrow of the Constitution in November of 1982. See Ex. 74, Mexico, Finance: Consolidation and Rescheduling of Certain Debts, TIAS 10961. Mexico economically collapsed again in 1995, and Defendants principal used the Exchange Stabilization Fund and Special Drawing Rights account to pay the debts of Mexico to the international lending institutions and creditors. See Ex. 71, 60 Fed. Reg. 19485, April 14; 1995; Also see 60 Fed. Reg. 35113, June 29, 1995.

**469.** Public Law 104-6, Title IV, the Mexican Debt Disclosure Act of 1995, Section 402, evidences the furtherance of Defendants' systematic scheme, and states that:

"(1) Mexico is an important neighbor and trading partner of the United States;
(2) On January 31, 1995, the President approved a program of assistance to Mexico, in the form of swap facilities and securities guarantees in the amount of $20,000,000,000, using the exchange stabilization fund;
(3) the program of assistance involves the participation of the Board of Governors of the Federal Reserve System, the International Monetary Fund, the Bank for International Settlements, the International Bank for Reconstruction and Development, the Inter-American Development Bank, the Bank of Canada, and several Latin American countries;
(4) the involvement of the exchange stabilization fund and the Board of Governors of the Federal Reserve System means that United States *taxpayer* funds will be used in the assistance to Mexico;
(5) assistance provided by the International Monetary Fund, the International Bank for Reconstruction and Development, and the Inter-American Development Bank may require additional United States contributions of *taxpayer* funds to those entities;
(6) the immediate use of *taxpayer* funds and the potential requirement for additional future United States contributions of *taxpayer* funds necessitates congressional oversight of the disbursement of funds; and
(7) the efficacy of the assistance to Mexico is contingent on the pursuit of sound economic policy by the Government of Mexico.

**470.** Defendants were fully aware of the systematic schemes in Mexico, and intended to and did

use and further the use of the taxing powers to extort funds and credit from the "American Taxpayers," including Loglia, to pay certain Mexican bond ("tesobonos") holders. See GAO Report, GAO/GGD-96-56, "Mexico's Financial Crisis - Origins, Awareness, Assistance, and Initial Efforts to Recover," February 1996, pgs. 5 - 7, **Ex. 87**.

**471.** Defendants were not only collecting American Taxpayer funds to pay the debts of Mexico to investors, they has specific knowledge of the use of the Exchange Stabilization Fund (ESF - Gold Reserve Act of 1934, as amended) and the IMF's "Special Drawing Rights" ("SDR") operations and transactions, and the depreciated value of their commercial paper, dishonored notes, credit instruments and other financial obligations, particularly to pay the debts of Mexico to private investors. As unequivocally stated in the GAO's investigation report. See GAO/GGD-96-56, "Mexico's Financial Crisis" **Ex. 87**:

> "Legal opinions from Treasury's General Counsel and the Department of Justice stated that the Secretary had the requisite authority to use ESF to provide assistance to Mexico through the three financing mechanisms previously described. GAO has no basis to disagree. Under the Gold Reserve Act, as amended, 31 U.S.C. § 5302, the Treasury Secretary has the authority to commit ESF funds if the commitment is consistent with IMF obligations of the U.S. government on orderly exchange arrangements and a stable system of exchange rates. The act provides the Secretary, with the approval of the President, the broad discretion to decide when the use of ESF is consistent with IMF obligations and states specifically that "the fund is under the exclusive control of the Secretary. . . ." 31 U.S.C. § 5302(2). In accordance with the discretion afforded him under the act, the Secretary concluded that the assistance package was consistent with the U.S. obligations to IMF because the Mexican financial crisis had a destabilizing effect on the peso's exchange rate and negative repercussions for the overall exchange rate system." See **Ex. 87**, pg. 8.

> "Some observers contended that the United States should not have provided financial assistance to Mexico at all. These critics usually based their objections on one or more of three arguments. First, they contended that it was inappropriate for the United States to protect investors in Mexico by preventing a Mexican government default on its short-term debt. They maintained that those investors—including tesobono holders—knew or should have known the risks

*101*

associated with their investments, and pointed out that, before the crisis, they had been rewarded for that risk with a high return. Consequently, these critics said, U.S. taxpayer funds should not have been put at risk to prevent those investors from bearing the consequences of their actions—even if it meant that Mexico would default on its short-term debts. In fact, it was argued, protecting certain investors in Mexico from financial losses would create a "moral hazard" problem, i.e., it would encourage future investors in Mexico (or even other developing countries) to make riskier investments than they otherwise would have made because they would expect the U.S. government to again come to their rescue should another Mexico-like crisis threaten. Creating this perception on the part of investors, critics alleged, could make future Mexico-like crises more likely.

Second, some people questioned whether the spread of Mexico's crisis to other emerging market economies posed a substantial threat to those countries or to U.S. investors in those countries. Some critics asserted that the spread that did occur was a temporary market overcorrection that would have reversed itself before it seriously harmed U.S. investors or other emerging market economies. Others contended that the effect of the spread was an appropriate market correction: financial markets had underestimated the risks of investing in certain countries and thus had over invested there in the first place. Finally, some critics of U.S. financial assistance to Mexico asserted that the threat a Mexican government default on its short-term debts posed to U.S. trade, employment, and immigration was not sufficiently great to justify financial assistance from the U.S. government." See **Ex. 87**, pgs. 117, 118

**472.**   Defendants aided and abetted their principal in collecting contributions, loans, money, or other things of value for or in interest of Mexico, and several other Nations, and obtained the funds to do so from the American taxpayer, in contravention of the Constitution for the United States of America, Article I, Section 8, Clause 1, and the criminal laws of the United States of America, 18 U.S.C. 951.

**473.**   The May 1997, GAO investigation and report on "Multilateral Organizations - U.S. Contributions to International Organizations for Fiscal Years 1993 - 1995" clearly shows that the Defendants' extorted  contributions ("about $2 billion each year", pg. 1) went to international organizations for their programs and projects which were primarily implemented in foreign

countries. (GAO/NSIAD-97-42, Appendix I, II and III, **Ex. 85**).

**474.**    Defendants were and are also engaged in international lending to private foreign enterprises is also indisputable. See GAO's official investigation and report on "Enterprise Funds: Evolving Models for Private Sector Development in Central and Eastern Europe", March 1994, GAO/NSIAD-94-77. As stated in this official investigative report:

> "Enterprise funds are an experimental model of assistance delivery to the developing private sectors in selected countries of Central and Eastern Europe as they change from centrally planned to market oriented economies. The enterprise funds are private U.S. corporations authorized by Congress and staffed by experienced business managers. They have operated for nearly 4 years in the region. Authorized funding for the first four funds is $250 million to the Polish -American Enterprise Fund, $70 million to the Hungarian-American Enterprise Fund, $65 million to the Czech and Slovak-American Enterprise Fund, and 55 million to the Bulgarian-American Enterprise Fund. Federal contributions to enterprise funds represented about 28 percent of all budgeted U.S. assistance for the region between fiscal years 1990 and 1993." See "Purpose," pg. 3.

> "The enterprise funds primarily make loans to, or investments in, small and medium businesses in which other financial institutions are reluctant to invest . . . According to the act, enterprise funds are private corporations, not U.S. government agencies, and their employees are not government officials or employees." See "Background," pgs. 3 - 4.

> The enterprise funds are to assist in developing the private sector, especially small-to-medium size businesses....[T]he act indicated that joint ventures, loans, grants, equity investments, feasibility studies, technical assistance, training, insurance, and guaranteed were all appropriate enterprise fund activities. See "Enterprise Funds Have A Broad Mandate", pg. 8.

**475.**    By 1998, the Enterprise Fund had been expanded to 19 countries and provided $1.3 billion of taxpayer funds to provide loans and grants to foreign private corporations and business enterprises. See "Foreign Assistance - Enterprise Funds' Contributions to Private Sector Development Vary," September 1999, GAO/NSIAD-99-221, **Ex. 86**. In Romania, $30 million of

American Taxpayers' funds were use for private foreign enterprises such as agribusiness, hotel development, machine, textile, pipe, and porcelain manufacturing, telecommunication, leasing and financial services, paint and rubber manufacturing, printing and construction material production. See **Ex. 84**, Foreign Assistance, Appendix I, pg. 28.   In Russia, $125 million of American Taxpayers' funds were used for private foreign enterprises such as agribusiness, petroleum production, diesel engine manufacturing, financial services, ice cream production, Xerox copy operations, a photo processing center, telecommunications, dental and medical clinics, production and distribution of bottled water, brewing and bottling facilities, women's clothing production, retail department stores and supermarket chains.  See **Ex. 84**, Foreign Assistance, Appendix II, pgs. 30 & 31. How a private brewery in Russia translates into paying the debts and providing for the general welfare and common defence of the United States is at best delusional.  Other taxpayer funds were also used in Russia by Defendant United States and by and through the IMF and The World Bank. See "Foreign Assistance - International Efforts to Aid Russia's Transition Have Had Mixed Results" November 2000, GAO-01-8.  Defendants have in provable fact prostituted the taxing powers .

**476.**   Defendants, are ultimately directed and controlled by the Secretary of Treasury.  See **Ex. 80**.

**477.**   Defendants, knew or should have known that the sum claimed in the NFTL filed March 9, 2001 at issue in this case was based upon a fraudulent, unlawful and unconstitutional systematic scheme which was devised, planned and implemented by and under the direction and control of their principal, the international organizations.

**478.**   Defendants and their attorneys devised and implemented an entire covert systematic scheme to overthrow the Constitution for the United States of America and to transfer the same

sovereign delegated powers to foreign international organizations, corporations, and associations.

**479.**   Defendants knew or should have known that on January 30, 1934, Congress passed the *Gold Reserve Act of 1934* , 48 Stat. 337.  Section 3 of the Gold Reserve Act provided for 35 per centum  reserve requirements against deposits and  40 per centum  against  Federal Reserve notes in actual circulation .   The reserves were  thereafter held in paper in the  form of paper   gold certificates  rather than actual gold Coin.  Section 10 of the Act pledged the gold and transferred it into the  Exchange Stabilization Fund  (ESF).  The ESF was placed under the  exclusive control of the Secretary of Treasury , and is  NOT  **"subject to review by any other officer of the United States."**  The same section declared that the  proceeds of all sales and investments and all earnings and interest accruing under this section shall be paid into the fund  and shall be available for the purposes  of the fund, i.e., the  settlement of international  balance–of–payments and   future agreements .  (Public Papers And Addresses of Franklin D. Roosevelt, supra, January 15, 1934, #8, pgs. 41–42)  In short anything deposited, pledged, hypothecated, or rehypothecated into the fund remains solely and exclusively in the fund and is never returned to the United States.

**480.**   Defendant knew or should have known that on June 19, 1968, Congress passed the *Special Drawing Rights Act*. (See: **Ex. 73**, Public Law 90–349, 82 Stat. 188)  The Act amended the Gold Reserve Act of 1934.   Under section 2 of the Special Drawing Rights Act, the  SDR s are administered as part of the  Exchange Stabilization Fund  established by  section 10 of the Gold Reserve Act of 1934, as amended (31 U.S.C. 822a).  Defendants' scheme was intended to insure that **(1)**  the operations of the Exchange Stabilization Fund and now the SDRs are under  exclusive control of the Secretary of Treasury  and  are not reviewable by any other officer of the United States;  **(2)**  anything in the Exchange Stabilization Fund remains in the Fund, for the use of the Fund;  **(3)** that  the new  program  was  subject  to  the  Articles  of  Agreement  of  the  IMF  in

accordance with Section 3 of the SDR Act of 1968; and, **(4)** the Secretary of Treasury, more properly known as the Governor of the IMF, and his agents are not officers of the United States, and do not have allegiance to any Nation or State. See Public Law 94–564, 90 Stat. 2660, Senate Report 94–1148, pg. 5942, 22 U.S.C. 286a.

**481.** Defendant knew or should have known that Section 4 of the Special Drawing Rights Act sets forth the general protocols. The Secretary of Treasury (Governor–IMF) issues an international letter of credit called a Special Drawing Rights certificate to the Federal Reserve banks in such form and in such denomination as he may determine. The SDR is deposited in the Federal Reserve banks which in turn credits the account of the Exchange Stabilization Fund with Federal Reserve notes in an amount equal to the value of the SDR certificate. *See* Public Law 90–349, 82 Stat. 188, Senate Report 1164, pg. 2110. SDRs became the collateral security for Federal Reserve notes. See Senate Report 1164, supra, pg. 2111. The term "dollar", as used by Defendants and their attorneys, was thereafter valued in direct and inseparable proportion to Special Drawing Rights, not to dollars, gold and silver Coin. The dollar became mere book entries in special accounts of the International Monetary Fund, and all in violation of in violation of Article I, Section 8, Clauses 1, 5; Public Law 93-110; and other domestic law. See Senate Report 1164, supra, pg. 2105.

**482.** The Special Drawing Rights Act of 1968, Public Law 90-349, 82 Stat. 188, incorporates the entire international lending scheme into the ESF. ALL proceeds resulting from the use of Special Drawing Rights, and all payments of interest to the United States through the entire scheme of loans collateralized, "guaranteed" and eventually paid by the "American taxpayer", are deposited into the ESF. All payments of charges or assessments pursuant to the applicable sections of the Articles of Agreement of the International Monetary Fund are made from the ESF.

*106*

**483.**    Defendants knew or should have known that "dollar" and "fair market value" thereafter was evaluated in fractional proportion to the SDR which were the new   standard of value. Defendant, their attorneys, and their principal knew and intended that the Constitutional mandates and domestic laws would be overthrown and would have no further meaning or effect. Defendants, their attorneys, and their principal meant to profit from the entire systematic scheme and enterprise.  The inflation and subsequent devaluation meant that  $2,225 million had to be paid to the international institutions so that their assets would not be depleted.  See Public Law 93–110, House Report 93–203, pg. 2051.

**484.**    Defendants knew or should have known that   The   *Articles Of Agreement of the International Monetary Fund* , 60 Stat. 1414, are an integral part of their systematic scheme, and under them, their paper obligations, being borrowed into circulation in the first instant, then became rehypothecated evidences of debt.

**485.**    Defendants knew or should have known that by becoming a member in the IMF, the United States rehypothecated its obligations and pledged the full faith and credit to the International Organization, under pretense of the Gold Reserve Act and the Articles of Agreement of the IMF. Defendants knew or should have known that when a government becomes a voting share stockholder in any corporation, it relinquishes its sovereign character and takes on the character of the corporation. (*The Bank of the U.S. vs. Planters Bank of Georgia,* 6 L.E. 244). Defendants had reasonable access to public records and knew or should have known that as of 1976, the United States had 19.96% of the voting share stock in the IMF.  See  Public Law 94–564, 90 Stat. 2660, Senate Report 94–1148, pgs. 5947, 5957.

**486.**    Defendants, and their attorneys, knew that Article IX *Articles Of Agreement of the International Monetary Fund*, as amended, granted the individuals operating under pretense of the

IMF, and its property, of whatever kind or nature, and wherever located, immunity from the judicial, legislative, or executive action of any member, including but not limited to, immunity from search, seizure, expropriation, taxation, etc. Defendants, their attorneys, and their principal knew that Article IX was a grant of a Title of Nobility which is expressly prohibited by the Constitution for the United States of America, Article I, Section 9, Clause 8, and Article I, Section 10, Clause 1, and further, violates the uniformity of taxation under Article I, Section 8, Clause 1. See **Ex. 80**.

**487.**   Defendants, their attorneys, and their principal also knew or should have known that Article IX of the IMF charter violated the Constitution for the United States of America, Article VI, Clause 2, as the international corporation was not "under authority" of the fundamental law of the Land.

**488.**   Defendants knew or should have known that the Articles of Agreement of the IMF openly asserted that those holding public office could do not only what the delegated powers did not authorize, but what they forbid. In other words, Congress created an entity and granted it the capacity to do what they were prohibited from doing directly, and then became members in the organization.

**489.**   Defendants were, at all times herein complained of, acting as contracted agents whose duties include soliciting and collecting information, contributions, loans, loan guarantees, money, or other things of value for or in interest of their international organization(s) and foreign principals from Loglia, and to his damage and detriment, and were not officers or employees of the United States.

**490.**   Defendants by and through their agents and employees, via their taxing, assessment, and collection procedures, without legal authority, did Seditiously and covertly implement an entire systematic scheme and criminal enterprise to overthrow several provisions of the Constitution for

the United States of America, including but not limited to, Article I, Section 8, Clause 1, 5, and 6; Article I, Section 10, Clause 1; Article IV, Section 2; Article VI; and Amendments I, V, IX, and X, and all to the damage and detriment of Loglia.

491.   Defendants, via their taxing, assessment, and collection procedures, without legal authority and in contravention of the Law of the Land, did solicit and collect information about Loglia, and others with which he freely associates, and did or intend to transfer and disclose said information over to the use of foreign principals and powers, in violation of 22 U.S.C. § 611(c), *The Foreign Agents Registration Act of 1938*, as amended, and 18 USC §§ 219 and 951, and all to the damage and detriment of Loglia.

492.   Defendants, and by and through their agents and employees, via their taxing, assessment, and collection procedures, without legal authority and in contravention of the Law of the Land, did solicit and collect money, loans, contributions, and other things of value from Loglia, and others, with intent to transfer and use the same to pay the debts and provide for the common defense and general welfare of other Nations and States, including but not limited to, Mexico, Brazil, Argentina, China, Russia, South Korea, Indonesia, England, Bosnia, etc., in violation of the Constitution for the United States of America, Article I, Section 8, Clause 1, and in violation of 22 U.S.C. § 611(c), *The Foreign Agents Registration Act of 1938*, as amended, and 18 USC §§ 219 and 951, and all to the damage and detriment of Loglia.

493.   Funds were appropriated under the *Multilateral Economic Assistance Act of 1995*, Public Law 102-391, 106 Stat. 1633, as amended, to to pay the debts and provide for the common defense and general welfare of other Nations and States, including but not limited to, Mexico, Brazil, Argentina, China, Russia, South Korea, Indonesia, England, Bosnia, etc., in violation of the Constitution for the United States of America, Article I, Section 8, Clause 1 of , and in violation of

22 U.S.C. § 611(c), *The Foreign Agents Registration Act of 1938*, as amended, and 18 USC §§ 219 and 951, and all to the damage and detriment of Loglia. See Executive Order 95-18, 60 Fed. Reg. 22447, April 21, 1995.

**494.** Defendants, and by and through their agents and employees, via their taxing, assessment, and collection procedures, without legal authority, and in contravention of the Law of the Land, did solicit and collect money, contributions, and other things of value from Loglia and others with intent to transfer and use the same to pay the debts of others to domestic, foreign, and international lending institutions, which are sometimes referred to as "edge banks," in violation of the Constitution for the United States of America, Article I, Section 8, Clause 1, and all to the damage and detriment of Loglia.

**495.** Defendants, and by and through their agents and employees, via their taxing, assessment, and collection procedures, without legal authority, and in contravention of the Law of the Land, did solicit and collect money, contributions, and other things of value from Loglia, and others with intent to transfer and use the same to promote and establish certain religions, in violation of the Constitution for the United States of America, Article I, Section 8, Clause 1, and all to the damage and detriment of Loglia.

**496.** Defendants, and by and through their agents and employees, via their taxing, assessment, and collection procedures, without legal authority, and in contravention of the Law of the Land, did solicit and collect money, contributions, and other things of value from Loglia, and others with intent to transfer and use the same to implement world government, in violation of the Constitution for the United States of America, Article I, Section 8, Clause 1, and Article IV, Section 4, and Public Law 471, Chapter 456, Section 109, and all to the damage and detriment of Loglia.

**497.**   Defendants, and by and through their agents and employees, via their taxing, assessment, and collection procedures, without legal authority, and in contravention of the Law of the Land, did solicit and collect money, contributions, and other things of value from Loglia, and others with intent to transfer and use the same to institute and support international organizations that are not republican in form, in violation of the Constitution for the United States of America, Article I, Section 8, Clause 1, and all to the damage and detriment of Loglia.

**498.**   Defendants, and by and through their agents and employees, via their taxing, assessment, and collection procedures, without legal authority, and in contravention of the Law of the Land, did solicit and collect money, contributions, and other things of value from Loglia, and others with intent to transfer and use the same to institute and support international organizations that claim titles of nobility and complete exemption from the Law of the Land, in violation of The Constitution for the United States of America, Article I, Section 8, Clause 1; Article I, Section 9, Clause 8; Article IV, Section 4; the IMF Articles of Agreement, 60 Stat. 1414, Article IX; and the World Bank Charter, Article VII, and all to the damage and detriment of Loglia.

**499.**   Defendants, and by and through their agents and employees, via their taxing, assessment, and collection procedures, without legal authority, and in contravention of the Law of the Land, did solicit and collect money, contributions, and other things of value from Loglia, and others with intent to transfer and use the same to institute and support international organizations that claim the right, power, and authority to determine the value of money in the United States of America instead of the duly elected domestic Congress, in violation of the Constitution for the United States of America, Article I, Section 8, Clauses 1 and 5; and Public Law 93-110, and all to the damage and detriment of Loglia.

**500.**   Defendants, and by and through their agents and employees, via their taxing, assessment,

and collection procedures, without legal authority, and in contravention of the Law of the Land, did solicit and collect money, contributions, and other things of value from Loglia, and others with intent to transfer and use the same to institute, implement and enforce international agreements which the Senate of the United States has not ratified, in violation of the Constitution for the United States of America, Article I, Section 8, Clause 1; Article II, Section 2, Clause 2, and all to the damage and detriment of Loglia.

**501.**   Defendants, and by and through their agents and employees, via their taxing, assessment, and collection procedures, without legal authority, and in contravention of the Law of the Land, did impair the obligation of contracts within the States of Nevada and New York, in violation of 18 USC § 241 and 26 USC § 7214, and all to the damage and detriment of Loglia.

**502.**   Defendants, and by and through their agents and employees, via their taxing, assessment, and collection procedures, without legal authority, and in contravention of the Law of the Land, did use Loglia and his property as collateral on loans to which he is not a signatory party, and all to the damage and detriment of Loglia.

**503.**   Defendants, and by and through their agents and employees, via their taxing, assessment, and collection procedures, without legal authority, and in contravention of the Law of the Land, did cloud the titles to real and personal property located within the State of New York, and all to the damage and detriment of Loglia.

**504.**   Defendants, and by and through their agents and employees, via their taxing, assessment, and collection procedures, without legal authority, and in contravention of the Law of the Land, did slander Loglia's good name and credit, and all to the damage and detriment of Loglia.

**505.**   Defendants, and by and through their agents and employees, via their taxing, assessment, and collection procedures, without legal authority, and in contravention of the Law of the Land,

did attempt to take, seize, and expropriate property without affording Loglia, and others due process of law and equal protection of the laws, and all to the damage and detriment of Loglia.

506.   Defendants, and by and through their agents and employees, via their taxing, assessment, and collection procedures, without legal authority, and in contravention of the Law of the Land, did conspire together and with each other to devise and implement a scheme to defraud and extort the sums of 12,761.41 for 1995, and 13,118.89 for 1996 in Federal Reserve Notes or its equivalent in Special Drawing Rights credit from Loglia, and all to the damage and detriment of Loglia.

507.   Defendants, knew or should have known, that their agency records were incorrect and false, fraudulent, and unlawful as they pertained to Loglia, including but not limited to, the Individual Master File, and that said records and the NFTL at issue in this case were an integral and inseparable part of any unlawful systematic scheme to implement and enforce the several unlawful and unconstitutional agreements to which Defendants and their principal(s) were parties or agents, and all to the damage and detriment of Loglia.

508.   Defendants knew or should have known that their acts and omissions would violate Loglia's secured right the due process and were committed in such a manner as to further oppress and prejudice Loglia in the exercise of his right to seek and obtain remedy and justice against the Defendants, their principal, and all to the damage and detriment of Loglia.

509.   Defendants, knew and reasonably expected that their acts against Loglia would cause others to shun or refuse to associate with Loglia, and that the same said acts and omissions were reasonably calculated to cause him economic harm and damage, and all to the damage and detriment of Loglia.

510.   Defendants, knew or should have known that their continued acts and omissions, as declared herein, were intended to further said unlawful acts and omissions and to retaliate against

Loglia.

**511.** Defendants, knew or should have known that retaliation against victims, witnesses, or informants, including but not limited to, Loglia, was and is a criminal act.

**512.** Defendants, knew that Loglia retained his secured right to due process, including but not limited to, notice and opportunity to be heard in a full, fair, and impartial hearing.

**513.** Defendants, and their principal(s), were not acting under authority of the Constitution for the United States of America or the Laws made in Pursuance thereof when committing the acts and omissions complained of herein, and all to the damage and detriment of Loglia.

### CAUSE OF ACTION 24
### ATTORNEYS FEES

**514.** Loglia repeats and realleges the allegations of Paragraphs 1 through 513 of this Complaint as though fully set forth herein.

**515.** As a result of the actions, omissions, and failings of the Defendants, Loglia has had to consult with an attorney and retain the services of legal counsel to discover matters related to inspection, disclosure, and dissemination of the returns, return information, and taxpayer return information pertaining to him, and has necessarily incurred attorney's fees and other costs in investigating, commencing, and prosecuting this action.   Further, Loglia anticipates incurring additional attorney's fees and costs in hereinafter pursuing this action, all in a final amount which is currently unknown.   Plaintiff Alexander Loglia therefore requests an additional award of reasonable attorney's fees and costs.

/ / /

/ / /

/ / /

**WHEREFORE,** Plaintiff, Alexander Loglia, moves the Court for an Order and Judgment as follows:

A.      That the NFTL at issue in this case (**Ex. 1**) be immediately released and expunged from the public records; and

B.      That the November 19, 2002 determination issued by Defendants (**Ex. 92**) be reversed; and

C.      That the November 19, 2002 determination issued by Defendants (**Ex. 92**) was in error and violated Loglia's secured right to due process; and

D.      That the assessments against Loglia pertaining to the 1995 and 1995 are void, unlawful, and made in violation of exiting laws and regulations; and

E.      That the assessment and collection activity used against Loglia pertaining to the 1995 and 1996 tax years at issue in this case were unlawful, oppressive, and carried out in violation of law; and

F.      That Loglia has no tax liability for 1995 and 1995; and,

G.      That Loglia is not required to file or make any income tax return pertaining to 1995 and 1996; and,

H.      That the *Gold Reserve Act of 1934* , 48 Stat. 337, as amended, be declared unconstitutional and void, or in the alternative, injunction issue enjoining Congress from appropriating any funds that are to be applied to, deposited into, or withdrawn from, the Exchange Stabilization Fund; and

I.      That the *Special Drawing Rights Act*, Public Law 90–349, 82 Stat. 188, as amended, be declared unconstitutional and void, or in the alternative, injunction issue enjoining Congress from appropriating any funds that are  in any way to be used in connection ot the Act, or in any way to be applied to, deposited into, or withdrawn from, the Exchange Stabilization Fund; and

J.      That the *Articles Of Agreement of the International Monetary Fund*, as amended, be

declared unconstitutional and void, or in the alternative, injunction issue enjoining Congress from appropriating any funds that are to be applied to any activities that pertain to said agreement, including, but not limited to, any funds appropriated to pay membership quotas for United States participation in the IMF, and any funds appropriated to be deposited in any of the IMF's sister organizations or "development banks"; and

**K.**     That the *Multilateral Economic Assistance Act of 1995*, Public Law 102-391, 106 Stat. 1633, as amended, be declared unconstitutional and void, or in the alternative, injunction issue enjoining Congress from appropriating any funds that are in any way to be used in connection with the Act; and

**L.**     That Defendants be held individually liable to Loglia for any and all damages that were proximately caused by each and every unlawful and unauthorized disclosure, each and every dissemination and/or inspection, and each and every use of confidential and secret returns, return information, and/or taxpayer return information regarding Alexander Loglia, including all costs associated with litigating this case, in accordance with the laws and treaties of the United States, including, but not limited to, 26 USC § 7431; and,

**M.**     That any and all returns, return information, and taxpayer return information regarding Alexander Loglia be immediately removed and expunged from the public records, including, but not limited to the NFTL at issue in this case; and,

**N.**     That Defendants be turned over to the appropriate prosecuting agency or Grand Jury to initiate the investigation of their aiding, abetting, counseling, commanding and procuring the unlawful solicitation and disclosure of confidential and secret returns, return information, and taxpayer return information pertaining to Loglia in violation of law, including, but not limited to, 26 USC § 7213; and,

**O.**     That Alexander Loglia be awarded compensatory damages in an amount to be determined at trial; and,

**P.**     That Alexander Loglia be awarded punitive damages in an amount to be determined at trial; and,

**Q.**     That Alexander Loglia be awarded consequential damages in an amount to be determined at trial; and,

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

*117*

**R.**     That Alexander Loglia be allowed to amend this Complaint as further discovery permits and requires; and

**S.**     That this Court award such other and further relief as the Court deems necessary and proper according to law and justice.

Dated this 19th day of December, 2002.

_____
Alexander Loglia
2232 S. Nellis, #182
Las Vegas, Nevada 89104
(702) 579-8825

State of Nevada              }
                             } ss.
County of Clark              }

I, Alexander Loglia, Plaintiff in this action, being first duly sworn, state that I have read and subscribed to the above **"VERIFIED COMPLAINT FOR DAMAGES UNDER 26 USC §§ 7214(a), 7431, 7432, 7433, 28 USC § 1346, FOR JUDICIAL REVIEW UNDER 26 USC § 6330(d)(1); FOR DECLARATORY RELIEF; AND CONSTITUTIONAL VIOLATIONS."**

_____
Alexander Loglia
2232 S. Nellis, #182
Las Vegas, Nevada 89104
(702) 579-8825

SUBSCRIBED and SWORN to before me
this 19th day of December, 2002.

_____
NOTARY PUBLIC, in and for
said County and State.

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
D. ROSENBAUM
No: 96-2918-1
My Appointment Expires June 4, 2004

*118*